AMERICAN LIFE INSURANCE CO. *v.* REESE SMITH STEWART ET AL.*

No. 440. Argued January 15, 1937.—Decided February 1, 1937.

*Mr. William C. Michaels,* with whom *Messrs. Earle W. Evans* and *Joseph G. Carey* were on the brief, for petitioner.

---

\* Together with No. 441, *American Life Insurance Co.* v. *Ora Inez Stewart et al.* Certiorari to the Circuit Court of Appeals for the Tenth Circuit.

*Mr. Charles G. Yankey* for respondents.

208

MR. JUSTICE CARDOZO delivered the opinion of the Court.

In these cases suits have been brought for the cancellation of policies of life insurance on the ground of fraud in their procurement, the policies providing that they shall cease to be contestable unless contest shall be begun within a stated time. The question to be determined is the existence, in the circumstances, of a remedy in equity.

On February 23, 1932, petitioner, a Colorado corporation, issued to Reese Smith Stewart, a citizen of Kansas, two policies of life insurance, each for $5,000, one payable to his son, who is a respondent in No. 440, and the other payable to his wife, who is a respondent in No. 441. Each policy contains a provision that it "shall be incontestable, except for non-payment of the premium, after one year from its date of issue if the Insured be then living, otherwise after two years from its date of issue." On May 31, 1932, three months and eight days after obtaining the insurance, the insured died, having made in his application. fraudulent misstatements, or so the insurer charges, as to his health and other matters material to the risk. On September 3, 1932, the insurer brought suit to cancel the insurance, a separate suit for each policy, the executrix of the insured being joined as a defendant with the respective beneficiaries. The complaint in each suit refers in a paragraph numbered 8 to the provision that the policy shall be incontestable after the lapse of two years. In the same paragraph it states in substance that the beneficiary may delay the commencement of the action at law till the time for contest

has gone by, or, beginning such an action within the period, may afterwards dismiss it and then begin anew. The insurer asks the court to act while yet the barrier is down.

On September 26, 1932, the defendants moved in each suit to dismiss the bill for want of equity. On October 11, 1932, the beneficiaries began actions at law in the same court to recover the insurance. On October 29, the insurer filed its supplemental bills setting forth the pendency of the actions at law, and praying an injunction against their continued prosecution. On July 28, 1933, the District Court denied the motions to dismiss, without passing, however, on motions made by the insurer to enjoin the actions at law. On August 29, a stipulation was signed and filed in each case that "the suit in equity shall be tried" by the court "before said law action is tried, Provided, however, that the issues in said law action shall in the meantime be made up in order that said law issues thus joined shall stand ready for trial, with the understanding that said law issues, if any remain for trial, shall be tried as soon after the trial of the suit in equity as the court shall determine," and this stipulation was approved by the court and an order made accordingly. On October 10, 1933, the defendants in each of the equity suits filed their answers to the bills, denying the fraud, admitting the making of the "incontestability clause" as stated in paragraph 8, and as to the other allegations of that paragraph denying any knowledge or information sufficient to form a belief. The answers did not state that the remedy at law was adequate.

Upon the trial of the suits in equity, the District Court found the fraudulent representations charged in the complaints, and decreed the cancellation and surrender of the policies. There was an appeal to the Court of Appeals for the Tenth Circuit, where the decree was reversed, one judge dissenting, the court holding that the insurer

had an adequate remedy at law. 80 F. (2d) 600; 85 F. (2d) 791. We granted certiorari to settle an important question, and one likely to recur, as to the scope of equitable remedies.

No doubt it is the rule, and one recently applied in decisions of this court, that fraud in the procurement of insurance is provable as a defense in an action at law upon the policy, resort to equity being unnecessary to render that defense available. *Enelow* v. *New York Life Ins. Co.*, 293 U. S. 379, 385; *Adamos* v. *New York Life Ins. Co.*, 293 U. S. 386; *Insurance Co.* v. *Bailey*, 13 Wall. 616; *Cable* v. *United States Life Ins. Co.*, 191 U. S. 288, 306. That being so, an insurer, though the victim of a fraud, may commonly stand aside and await the hour of attack. But this attitude of aloofness may at times be fraught with peril. If the policy is to become incontestable soon after the death of the insured, the insurer becomes helpless if he must wait for a move by some one else, who may prefer to remain motionless till the time for contest has gone by. A "contest" within the purview of such a contract has generally been held to mean a present contest in a court, not a notice of repudiation or of a contest to be waged thereafter. See, e. g., *Killian* v. *Metropolitan Life Ins. Co.*, 251 N. Y. 44, 48; 166 N. E. 798; *New York Life Ins. Co.* v. *Hurt*, 35 F. (2d) 92, 95; *Harnischfeger Sales Corp.* v. *National Life Ins. Co.*, 72 F. (2d) 921, 922. Accordingly an insurer, who might otherwise be condemned to loss through the mere inaction of an adversary, may assume the offensive by going into equity and there praying cancellation. This exception to the general rule has been allowed by the lower federal courts with impressive uniformity.[1] It

---

[1] From the fourth circuit: *Jefferson Standard Life Ins. Co.* v. *Keeton*, 292 Fed. 53, 54–56; *Jones* v. *Reliance Life Ins. Co.*, 11 F. (2d) 69, 70; *Brown* v. *Pacific Mutual Life Ins. Co.*, 62 F. (2d) 711, 712; *New York Life Ins. Co.* v. *Truesdale*, 79 F. (2d) 481, 485;

has had acceptance in the state courts.[2]  It was recognized only recently in an opinion of this court, though the facts were not such as to call for its allowance.  *Enelow* v. *New York Life Ins. Co., supra,* at p. 384.[3]

The argument is made, however, that the insurer, even if privileged to sue in equity, should not have gone there quite so quickly.  Six months and ten days had gone by since the policies were issued.  There would be nearly a year and a half more before the bar would become absolute.  But how long was the insurer to wait before assuming the offensive, and how was it to know

---

*Pacific Mutual Life Ins. Co.* v. *Parker,* 71 F. (2d) 872, 874.  From the fifth circuit: *Jefferson Standard Life Ins. Co.* v. *McIntyre,* 294 Fed. 886, 888.  From the sixth circuit: *New York Life Ins. Co.* v. *Seymour,* 45 F. (2d) 47, 48, 49; *Rose* v. *Mutual Life Ins. Co. of New York,* 19 F. (2d) 280, 282.  From the seventh circuit: *Harnischfeger Sales Corp.* v. *National Life Ins. Co.,* 72 F. (2d) 921, 922, 923. From the eighth circuit: *Peake* v. *Lincoln National Life Ins. Co.,* 15 F. (2d) 303, 305, 306; *Lincoln National Life Ins. Co.* v. *Hammer,* 41 F. (2d) 12, 17.  From the ninth circuit: *Massachusetts Bonding & Ins. Co.* v. *Anderegg,* 83 F. (2d) 622, 625.  From the tenth circuit: *New York Life Ins. Co.* v. *Thompson,* 78 F. (2d) 946, 947 (semble). From the District of Columbia: *Densby* v. *Acacia Mutual Life Assn.,* 64 App. D. C. 319; 78 F. (2d) 203, 206.

[2] *New York Life Ins. Co.* v. *Rigas,* 117 Conn. 437; 168 Atl. 22; *Ebner* v. *Ohio State Life Ins. Co.,* 69 Ind. App. 32; 121 N. E. 315; *Aetna Life Ins. Co.* v. *Daniel,* 328 Mo. 876; 42 S. W. (2d) 584; *New York Life Ins. Co.* v. *Cobb,* 219 Mo. App. 609; 282 S. W. 494; *New York Life Ins. Co.* v. *Steinman,* 103 N. J. Eq. 403; 143 Atl. 529; *American Trust Co.* v. *Life Ins. Co. of Virginia,* 173 N. C. 558; 92 S. E. 706; *Prudential Ins. Co.* v. *Tanenbaum,* 53 R. I. 355; 167 Atl. 147.

[3] "The instant case is not one in which there is resort to equity for cancellation of the policy during the life of the insured and no opportunity exists to contest liability at law.  Nor is it a case where, although death may have occurred, action has not been brought to recover upon the policy, and equitable relief is sought to protect the insurer against loss of its defense by the expiration of the period after which the policy by its terms is to become incontestable."

where the beneficiaries would be if it omitted to strike swiftly? Often a family breaks up and changes its abode after the going of its head. The like might happen to this family. To say that the insurer shall keep watch of the coming and going of the survivors is to charge it with a heavy burden. The task would be hard enough if beneficiaries were always honest. The possibility of bad faith, perhaps concealed and hardly provable, accentuates the difficulty. There are statements by judges of repute which suggest a possibility that the contest barrier may stand though the holder of the policy has gone to foreign lands. *New York Life Ins. Co.* v. *Panagiotopoulos,* 80 F. (2d) 136, 139. There are statements that it will stand though an action at law, brought within the period, had been dismissed or discontinued later. See *New York Life Ins. Co.* v. *Seymour,* 45 F. (2d) 47, 48; *Harnischfeger Sales Corp.* v. *National Life Ins. Co.,* 72 F. (2d) 921, 925; *New York Life Ins. Co.* v. *Truesdale,* 79 F. (2d) 481, 485, with which contrast *New York Life Ins. Co.* v. *Miller,* 73 F. (2d) 350, 355; *Thomas* v. *Metropolitan Life Ins. Co.,* 135 Kan. 381, 387; 10 P. (2d) 864, and *Powell* v. *Mutual Life Ins. Co.,* 313 Ill. 161, 170; 144 N. E. 825. Whether such statements go too far we are not required to determine, for a slight variance in the facts, as, e. g., in the rule prevailing in the jurisdiction where the final suit is brought, may have a bearing on the conclusion. At least in such warnings there are possibilities of danger which a cautious insurer would not put aside as visionary. "Where equity can give relief plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law." *Davis* v. *Wakelee,* 156 U. S. 680, 688. To this must be added the danger that witnesses may disappear and evidence be lost. A remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient. *Boyce's Executors* v. *Grundy,* 3

Pet. 210; *Drexel* v. *Berney,* 122 U. S. 241; *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1; *Union Pacific R. Co.* v. *Weld County,* 247 U. S. 282, 287. "It must be a remedy which may be resorted to without impediment created otherwise than by the act of the party." *Cable* v. *United States Life Ins. Co., supra,* at p. 303. Here the insurer had no remedy at law at all except at the pleasure of an adversary. There was neither equality in efficiency nor equality in certainty nor equality in promptness. "The remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party." *Bank of Kentucky* v. *Stone,* 88 Fed. 383, 391; cf. *Lincoln National Life Ins. Co.* v. *Hammer,* 41 F. (2d) 12, 16. To make a contract incontestable after the lapse of a brief time is to confer upon its holder extraordinary privileges. We must be on our guard against turning them into weapons of oppression.

The argument is made that the suits in equity should have been dismissed when it appeared upon the trial that after the filing of the bills, and in October, 1932, the beneficiaries of the policies had sued on them at law. But the settled rule is that equitable jurisdiction existing at the filing of a bill is not destroyed because an adequate legal remedy may have become available thereafter. *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288, 296; *Lincoln National Life Ins. Co.* v. *Hammer, supra; New York Life Ins. Co.* v. *Seymour, supra.* There is indeed, a possibility that the bringing of actions at law might have been used by the respondents to their advantage if they had not chosen by a stipulation to throw the possibility away. A court has control over its own docket. *Landis* v. *North American Co.,* 299 U. S. 248. In the exercise of a sound discretion it may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same. *Ibid.* If request had been made by the respondents to suspend

the suits in equity till the other causes were disposed of, the District Court could have considered whether justice would not be done by pursuing such a course, the remedy in equity being exceptional and the outcome of necessity. Cf. *Harnischfeger Sales Corp.* v. *National Life Ins. Co.*, 72 F. (2d) 921, 922, 923. There would be many circumstances to be weighed, as, for instance, the condition of the court calendar, whether the insurer had been precipitate or its adversaries dilatory, as well as other factors. In the end, benefit and hardship would have to be set off, the one against the other, and a balance ascertained. *Landis* v. *North American Co., supra.* But respondents, as already indicated, gave that possibility away. They stipulated that the issues in equity should be tried in advance of those at law, and that only such issues, if any, as were left should be disposed of later on. The cases were allowed to stand as if challenge to the suits had been made by a demurrer only. So challenged, they prevail.

The decree should be reversed, and the cause remanded to the Court of Appeals for a consideration of the merits and for other proceedings in accord with this opinion.

*Reversed.*