## EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. SAFTLAS et al.

### No. 10089.

District Court, E. D. Pennsylvania.
May 5, 1941.

Herman P. Abramson and Robert J. Sterrett, both of Philadelphia, Pa., for plaintiff.

Arthur S. Arnold, Samuel D. Goodis, and Sundheim, Folz, Kamsler & Goodis, all of Philadelphia, Pa., for defendants.

BARD, District Judge.

The Equitable Life Assurance Society filed its complaint in this court on August 17, 1938, seeking to rescind the disability and double indemnity provisions of the life insurance policy issued to Joseph Saftlas, to enjoin the insured from continuing an action in the state courts to recover disability benefits, and to enjoin both defendants from commencing any further action for either disability or double indemnity benefits. Fraud in the procurement of the policy was alleged as the basis for the relief sought. Regina Saftlas was joined as a defendant by reason of being trustee for Irving Saftlas, minor beneficiary.

Defendants' motions to dismiss the complaint on jurisdictional and substantive grounds were denied. D.C., 35 F.Supp. 62.

By its terms, the policy was to be incontestable after in force one year, except as to the provisions relating to disability and double indemnity. At the time the complaint was filed, the policy had been in effect several years.

The complaint alleges that the insured made false and fraudulent answers to questions contained in the application for the insurance. The answers were concerning his health as well as consultation and treatment by physicians within five years prior to the application for insurance. It is further alleged that these answers were material to the risk concerned and were made with the deliberate intent to deceive the plaintiff into issuing the policy.

I make the following special findings of fact:

1. The plaintiff, the Equitable Life Assurance Society of the United States, is a corporation organized and existing under the laws of the State of New York, and duly registered in Pennsylvania to issue policies of insurance.

2. The defendants Joseph Saftlas, the insured, and Regina Saftlas, trustee for Irving Saftlas, are residents of Philadelphia, Pennsylvania.

3. On June 19, 1929, Joseph Saftlas applied to the plaintiff for a policy to insure his life in the sum of $3,500; and to provide for the payment of a double indemnity of $7,000 upon his death from accident; and to provide a monthly disability income and a waiver of premiums in the event he became totally and permanently disabled.

710

4. The application, consisting of parts 1 and 2, was signed by Joseph Saftlas in Philadelphia and he agreed that the application was to be a part of the policy which was subsequently issued pursuant thereto.

5. On June 22, 1929, the plaintiff issued to Joseph Saftlas as the insured, a policy of life insurance No. 7,725,845, which was delivered to him in Philadelphia, containing provisions for benefits in the event of the insured's accidental death, and total and permanent disability. All premiums were paid by insured to a Philadelphia agent.

6. As appears from the Educational Fund Agreement, which is a part of the policy, the proceeds thereof in the event of the insured's death become payable to his son, Irving Saftlas, but provides that in the event the insured dies prior to the date that Irving Saftlas attains the age of seventeen, the proceeds of the policy shall be held by the plaintiff until Irving Saftlas reaches the said age, and in the event the insured dies during the minority of Irving Saftlas, then the payments due under the policy shall be paid to Regina Saftlas, the mother of Irving Saftlas, as trustee, or to the successor in trust for Irving Saftlas. Irving Saftlas was born on March 18, 1927.

7. The policy provides in part that:

The plaintiff "Hereby Insures the Life of Joseph Saftlas * * * and agrees to pay * * * Thirty Five Hundred Dollars * * * upon receipt of due proof of the death of the Insured * * *. And the Society agrees to increase the amount so payable to Seven Thousand Dollars, upon receipt of due proof of *death from accident* * * *. And further, if the Insured * * * becomes totally and presumably permanently disabled as defined in the Total and Permanent Disability provision on the third page hereof, the Society will, subject to the conditions of such provision, waive subsequent premiums and pay to the Insured a Disability Income of Thirty-five Dollars a month.

"This insurance is granted in consideration of the payment in advance of One Hundred seventy-three and 85⁄100 Dollars, and of the payment annually thereafter of a like sum * * *. These payments include an annual premium of $4.59 for the Double Indemnity and of $12.11 for the Total and Permanent Disability provision hereof. * * *

"This policy, except as to the provisions relating to Disability and Double Indemnity, shall be (a) *incontestable* after it has been in force during the lifetime of the Insured for a period of one year from its date of issue * * *."

8. The application contains a number of questions which the insured answered as set out therein as part of the said application.

9. Insured answered "No" to the question No. 6 of the application, as to whether he ever had, or had been treated for, any disease or disturbance of the tonsils, stomach, liver, intestines or eye.

10. Insured answered "No" to question No. 7 of the application, as to whether he ever had vertigo, dizzy spells, or ever had his blood examined. To the question whether he had any other illness or injury not mentioned above, he answered: "Yes —Influenza."

11. Question No. 9 of the application is: "State every physician or practitioner whom you have consulted or who has treated you during the past five years." Insured answered this question as follows:

| Name and address of each | Date and details | Result |
| --- | --- | --- |
| Dr. Rattenberg 54th & Arlington, Phila | Occasional cold | Good |

12. The application contains the following declaration made by the insured above his signature: "I hereby agree that the policy issued hereon shall not take effect until the first premium has been paid during my good health *. * *. All of the foregoing answers and all those * * contained in Part II hereof, are true, and are offered to the Society as an inducement to issue the policy for which application is hereby made."

13. Prior to application for the insurance in question, the insured had or had been treated for disturbances or diseases of stomach, intestines and kidney.

14. Prior to application for the insurance in question, the insured had frequent dizzy spells and vertigo, and had been advised to have a tonsilectomy performed.

15. In June 1924, the insured had a disease or disturbance of the stomach and intestines which was accompanied by pain in the lumbar region, vertigo, diarrhea, cramps and headaches.

16. On June 25, 1924, the insured consulted Dr. H. M. Eberhard, a specialist, on account of the disturbance mentioned in the foregoing paragraph.

17. On June 25, 1924, Dr. H. M. Eberhard made a gastric analysis of the insured's stomach which involved inserting a tube down the insured's throat to the stomach, extracting some of its contents and examining it. Dr. Eberhard, at that time, also made an examination of the insured's faeces, urine, blood, and blood pressure.

18. On June 25, 1924, Dr. H. M. Eberhard prescribed for the insured a bland diet, the use of an electric bag or pad for an hour or more upon the insured's stomach. For the insured's low blood pressure, Dr. Eberhard prescribed three baths a week with the temperature of the water between 95 and 100 degrees, and a saline enema whenever the attacks of diarrhea were severe, and subcarbonate of bismuth to be taken internally by the insured to reduce the inflammation.

19. On June 25, 1924, the insured gave Dr. H. M. Eberhard a history of having had jaundice in 1922.

20. The insured consulted Dr. Martin Rehfuss in September and October of 1926, and in February of 1927. At the time he complained of blurring of eyes, severe headaches, dizziness, severe pain in back when excited, nervousness, and inability to sleep well.

21. Dr. Rehfuss X-rayed the insured, fluoroscoped him, made a urine analysis, examined his stool which showed a positive reaction for blood, found evidence of liver, gall bladder and duodenal disturbances. The Doctor made a gastric examination of the stomach, and of the bile which involved the insertion of a tube down the insured's throat, and the extraction of part of the contents of the stomach and the bile.

22. The insured consulted Dr. H. H. Lott in October, 1925, and April and May of 1926.

23. The insured consulted Dr. A. Morgan twice a year in 1926, 1927 and 1928 for general checkups, with particular reference to cause of blurring eyes and frontal headaches. At one time Dr. Morgan prescribed a diet and requested the insured to note his reactions to particular foods.

24. The insured consulted Dr. A. E. Colcher in 1935 and gave him a history which stated, in part, "Dr. Eberhard made a diagnosis of colitis which he said extended down to caecum," and the insured also stated that he had been attended by Dr. Rehfuss.

25. The insured consulted Dr. B. Gouley in 1935, and he received from the insured a history that the insured previously had jaundice and colitis.

26. The answers given by the defendant to questions relative to health and to consultation of physicians were false.

27. When the insured made the false statements in answer to certain of the questions on the application, he was aware of their falsity.

28. On January 15, 1938, the plaintiff served upon the defendants a notice rescinding the disability and double indemnity features of the policy and tendered to them the sum of $245.65, being a refund of premiums in the amount of $150.30 on the disability and double indemnity features of the policy, and $55.46 being the interest on the premiums, and $39.89 being an adjustment of dividends on the policy.

29. The defendants refused to accept such tender.

30. On April 28, 1938, Joseph Saftlas instituted against the Equitable Life Assurance Society of the United States, the present plaintiff, an action in assumpsit in the Court of Common Pleas No. 5 of Philadelphia County, as of March Term, 1938, No. 3932, for disability benefits alleged to be due under the policy, and he averred that he has been totally disabled continuously since April 19, 1937, and that this disability has continued to the date of the action. He made claim therein for the monthly disability payments of $35 totalling $420 covering the period up to May 19, 1938, and for monthly disability payments thereafter, with interest on each payment.

31. The plaintiff relied on the insured's answers as contained in the application, in issuing the policy.

### Discussion.

■ Under the law of Pennsylvania, incontestability clauses in life isurance policies do not apply to disability and double indemnity provisions and do not bar insurers from seeking cancellation of disability and double indemnity provisions on ground of fraud. Guise v. New York Life Ins. Co., 127 Pa.Super. 127, 191 A. 626; Ruhlin v. New York Life Ins. Co., 3 Cir., 106 F.2d 921.

■ Where statements in an application for insurance are to be deemed representa-

tions as here, rather than warranties, the insurer in order to avoid the policy must show they were false and that the insured knew they were false or otherwise acted in bad faith in making them. Evans v. Penn Mutual L. Ins. Co., 322 Pa. 547, 186 A. 133; Bailey v. Pacific Mut. L. Ins. Co., 336 Pa. 62, 6 A.2d 770.

■ An answer known to be false is presumptively fraudulent. Lilly v. Metropolitan Life Ins. Co., 318 Pa. 248, 177 A. 779; Stein v. New York Life Ins. Co., 319 Pa. 225, 179 A. 589; Evans v. Penn Mutual L. Ins. Co., supra; Mutual Life Ins. Co. of New York v. Bamford, 132 Pa.Super. 255, 200 A. 907.

■ It is my factual conclusion that these statements were false. Furthermore, though I am not satisfied that the circumstances were such that an inference of intentional falsification was dictated as a matter of law, it is my factual conclusion that the insured knew the answers were false when he made them.

■ The defendant urges that a factual conclusion that the insured knew of the falsity is precluded, as a matter of law, by reason of the plaintiff's failure to adduce evidence directly pertinent to and probative. of the insured's state of mind at the time of answering the questions. Knowledge or memory of particular matters, by its very nature, is not susceptible to direct proof, but must be determined by inference from indicative conduct or from the inherent quality of the occurrences or circumstances by which it was acquired.

Practically speaking, the record is replete with indications that insured knew the falsity of his answers. During the several years preceding the application he was plagued by physical disturbances which caused him frequent and considerable discomfort and concern, and prompted him to consult physicians who were specialists as well as physicians who were general practitioners. The nature and persistence of his diseases or disturbances and consequent discomfort was such as to support an inference that they were not forgotten. The examination and treatment by at least two of the physicians were of such a character that there arises an even stronger inference that the insured had not forgotten them at the time of application.

■ The defendant's contention that there are absent prerequisites to the equitable relief sought is insupportable. The insurer need not await the determination of the issue of fraud in the pending suit in the state court, but may proceed in equity for the cancellation of the disability and double indemnity provisions. American Life Ins. Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605, 111 A.L.R. 1268; Brown v. Pacific Mut. Life Ins. Co., 4 Cir., 62 F.2d 711; Ruhlin v. New York Life Ins. Co., 3 Cir., 93 F.2d 416; Metropolitan Life Ins. Co. v. Schneider, D.C., 34 F.Supp. 220.

There is danger that witnesses may disappear or that evidence may be lost. Further, all the parties interested in the policy are not before the court in the suit at law. Also, the adequacy of the remedy at law depends upon the will of the insured, and the ends of justice will not be satisfied by a mere judgment for the insurer in the action at law, but require some distinctly equitable relief such as cancellation or reformation of the instrument sued upon and injunction against prosecution of the action at law.

■ In an earlier opinion on defendants' motion to dismiss, D.C., 35 F.Supp. 62, I said that this court would not enjoin prosecution of the prior action in the state court, but that the plaintiff could proceed in this court until a judgment was obtained in one court which could be set up as res adjudicata in the other. It is my present conclusion, under the authority of Ruhlin v. New York Life Ins. Co., 3 Cir., 93 F.2d 416, reserved on another point, that the plaintiff, having established fraud on the part of the defendant, is entitled to have the defendant enjoined from prosecuting the action in the state court. See also Metropolitan Life Ins. Co., v. Schneider, supra.

### Conclusions of Law.

1. The disability and double indemnity provisions of policy No. 7,725,845 issued by the Equitable Life Assurance Society of the United States, the plaintiff, to Joseph Saftlas are contestable.

2. The answers and statements made by Joseph Saftlas in his application for the policy were material, false and fraudulent representations as to his health and past medical history.

3. The plaintiff is entitled to equitable relief.

4. The plaintiff is entitled to have the double indemnity and disability provisions rescinded and declared void.

5. The plaintiff is entitled to be released from liability under the double indemnity and disability provisions.

6. The plaintiff is entitled to a surrender of the policy for reissuance without the voided provisions.

7. The defendant is entitled to be reimbursed for the premiums and interest thereon paid by him on the double indemnity and disability provisions.

8. Defendant Joseph Saftlas should be enjoined from prosecuting his action in the Court of Common Pleas No. 5 of Philadelphia County, No. 3932 of March Term, 1938, and should be directed to mark the said action discontinued.

9. The defendants are to bear the costs.

All requested findings of fact and conclusions of law not herein included are hereby denied.

A decree to conform with the above may be submitted.