Marie Alma JAMES et al., Appellants,

v.

PENNSYLVANIA GENERAL INSURANCE COMPANY, Appellee.

No. 18537.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 20, 1964.
Decided June 30, 1965.

Danaher, Circuit Judge, dissented.

Mr. B. Paul Noble, Washington, D. C., for appellant Dona.

Mr. Jack A. Hillman, Washington, D. C., for appellants James and Reeves.

Mr. William H. Clarke, Washington, D. C., with whom Messrs. Richard W. Galiher, William E. Stewart, Jr., and John H. Verchot, Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

BAZELON, Chief Judge:

Appellee Pennsylvania General Insurance Company sought a declaratory judg-

**230**

ment that it was not liable to appellants under an automobile liability insurance policy. The policy's stated expiration date was July 14, 1960. Although the Company indicated that a 21-day grace period would be allowed for renewal, it received nothing from the insured until August 28 or 29, 1960, when it received by mail a renewal application together with a premium check dated July 16, 1960. The Company's employees then deleted the "lapsed" notation that had been placed on the insured's policy and cashed his check.

After expiration of the grace period but prior to appellee's receipt of the insured's renewal application, the insured's automobile was involved in an accident in which serious personal injuries were sustained. The Company initially undertook defense of the lawsuit arising out of the accident, but only after first notifying the insured that it was acting without prejudice to a later denial of coverage. Approximately a year before the lawsuit came to trial, the Company withdrew and instituted this suit. Despite appellants' timely demand for a jury trial, the court heard this case without a jury and held for the Company. The court found that the insured had pre-dated his premium check for the purpose of deceiving appellee into treating the renewal application as if it had been mailed during the grace period, when in fact it had not.

■■ On this appeal we reject appellants' contentions that they proved a valid renewal of the insured's policy as a matter of law, and alternatively that the Company waived any right to object to the renewal's validity.[1] Nor can we accept their contention that by originally undertaking defense of the lawsuit arising out of the accident, the Company estopped itself from later denying coverage. In the absence of a showing of prejudice by appellants, the Company's prompt notification to the insured that it was defending the lawsuit without prejudice to a later denial of coverage was sufficient to prevent estoppel. See Fisher v. Firemen's Fund Indemnity Co., 244 F.2d 194, 196 (10th Cir. 1957).

■■ But there is possible merit in appellants' claim that they were erroneously deprived of a jury trial. In providing for declaratory judgments, Congress left unaffected the right to jury trial. Rule 57, FED.R.CIV.P.; American Lumberman's Mut. Casualty Co. of Illinois v. Timms & Howard, Inc., 108 F.2d 497 (2d Cir. 1939). The right to jury trial in a declaratory judgment action depends, therefore, on whether the action is simply the counterpart of a suit in equity—that is, whether an action in equity could be maintained if declaratory judgment were unavailable—or whether the action is merely an inverted lawsuit. See Pacific Indemnity Co. v. McDonald, 107 F.2d 446 (9th Cir. 1939); James, *Right to a Jury Trial in Civil Actions*, 72 YALE L.J. 655, 685–86 (1963); BORCHARD, DECLARATORY JUDGMENTS 400 n. 63 (1941).

■■ The issue tendered by appellee's complaint was fraud in the procurement of the insured's renewed policy.[2]

---

1. Appellants' waiver argument is based on the trial court's finding that appellee's agent was notified of the accident prior to the receipt of the insured's renewal application. Since the trial court held held that by falsely pre-dating his check, the insured intentionally induced appellee to consider his renewal application as if made within the grace period, it is irrelevant whether appellee had imputed knowledge of the accident at the time it struck the "lapsed" notation from insured's policy. See generally 3 POMEROY, EQUITY JURISPRUDENCE § 876 *et seq.* (5th ed. 1941). Appellants might argue that in view of the Company's imputed

knowledge of the intervening accident, it was not justified in relying on the veracity of the date on the insured's check without first having conducted an independent investigation. See *id.* at § 891. Appellants have not made that argument in either court, however, and we are not inclined to consider it initially at this time.

2. The trial court's memorandum opinion indicates it considered the issue to be one of acceptance of the insured's offer to renew his policy. The trial court apparently reasoned that because the insured intentionally deceived the Company into

At common law an action to rescind a contract for fraud in the procurement could be maintained in equity only if the matters giving rise to the right of recision could not be adequately presented in defending against a legal action on the contract, thus affording no adequate remedy at law. For example, if delay in presenting the defense of fraud would be prejudicial, the party asserting the defense was permitted to bring an action in equity rather than awaiting a legal action on the contract.[3] But no such prejudice was deemed to occur where an insurance claim had already arisen and a suit on the policy was pending or threatened. Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); DiGiovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47 (1935).

When the Company initiated this suit, the loss under the policy had not been established, but an action was then pending in which the loss was subsequently established. The adequacy of the Company's legal remedy depends upon the nature of its proof of fraud. For example, it has been held that an insurer in these circumstances could maintain an equitable action for recision where its claim of fraud rested on the testimony of witnesses not generally available to it and who might have disappeared before a legal action on the policy could or would be instituted. Massachusetts Bonding & Ins. Co. v. Anderegg, *supra*.[4] Here, however, the alleged fraud is in large part based on documentary proof, such as the insured's premium check. The Company's employees would seem to be generally available to it to show that the check date induced them to delete the "lapsed" notation on the policy. Moreover, the Company could preserve the testimony of its employees by deposi-

treating his renewal application as if made during the grace period, the striking of the "lapsed" notation from the insured's policy and the cashing of his check did not constitute a valid acceptance. The Company's prompt disclaimer upon learning the true facts was therefore viewed as an effective rejection of the offer to renew. Although the same facts need be established to sustain either theory of the Company's cause of action, we think the issue is properly viewed as one of fraud. Ordinarily, striking the "lapsed" notation and cashing the check would constitute an acceptance of the offer to renew. The insured's misrepresentation of the check date, like fraudulent misrepresentations in an application concerning age, principal place of garaging, etc., does not convert the otherwise valid acceptance into a non-acceptance. See, *e.g.*, Massachusetts Bonding & Ins. Co. v. Anderegg, 83 F.2d 622 (9th Cir. 1936).

3. "The rule is generally adopted that a suit will not be sustained to cancel an executory,—non-negotiable, personal contract,—for example, a policy of insurance,—when the fraud might be set up as a defense to an action on the contract, and there are no special circumstances which would prevent the defense from being available, adequate, and complete. * * * On the other hand jurisdiction has been exercised to cancel instruments, although not negotiable, where delay and other circumstances might ultimately hinder a defense in an action at law. For instance, a right to maintain a suit in equity often arises from the fact that a defense at law in an action on an insurance policy may be lost to the insurer because of uncertainty as to the time when loss may occur, the danger that witnesses may disappear, or because the policy may become incontestable after a limited period unless such a suit is begun by the insurer." 3 POMEROY, EQUITY JURISPRUDENCE § 914a, at 590–92 (1941).

*Compare* American Life Ins. Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605 (1937), *with* Prudential Ins. Co. of America v. Saxe, 77 U.S.App.D.C. 144, 134 F.2d 16 (1943).

4. We think State Farm Mutual Auto Ins. Co. v. Mossey, 195 F.2d 56 (7th Cir.) cert. denied, 344 U.S. 869, 73 S.Ct. 109, 97 L.Ed. 674 (1952), upon which the Company relies, is unsound to the extent that it may be read to uphold denial of a jury trial wherever no loss under the insurance policy has been sustained. The court there upheld denial of a jury trial, although the insurer's claim of fraud was based entirely on documentary proof. Not only is that view inconsistent with past cases, but it would tend to induce insureds to compromise damage claims unfavorably in order to win the proverbial "race to the courthouse door."

tion pursuant to Rule 27, Fed.R.Civ.P. Finally, this suit was instituted when it was known that the pending lawsuit to establish a loss would likely come to trial in about a year.[5]

■ Although the foregoing factors suggest that the Company's legal remedy was adequate, and consequently that appellants' demand for a jury trial should have been honored, the parties have never had an opportunity to address themselves to the adequacy of appellee's legal remedy, since the trial judge denied a jury trial without inquiring into that issue. We think that such an opportunity should be afforded now. Factors not presently appearing in the record may exist which demonstrate that delay in adjudicating the fraud issue likely would have prejudiced appellee's case seriously.[6] Accordingly we remand with directions to hold a hearing to determine whether appellee's legal remedy was adequate at the time this suit was filed, with the contingency of a new trial before a jury to abide the result.

So ordered.

DANAHER, Circuit Judge (dissenting):

The appellee had issued to Donald E. Reeves an automobile liability policy for a period of six months from January 14, 1960 to July 14, 1960. On August 18, 1960, one Marie Alma James, while driving the Reeves car, was involved in an accident in which one Mary Dona was injured. The latter sued Reeves and James alleging negligence. Appellant on October 17, 1961 instituted an action seeking a declaratory judgment which, after full trial before a District Judge sitting without a jury, resulted in an order that the appellee "is not liable to the Defendant Reeves on account of the claims of the Defendants James and Dona based upon an accident which occurred on August 18, 1960"; and further, that the appellee "is not liable to the Defendant Reeves on account of any claim or claims" which occurred after the termination of the policy on or about July 14, 1960.

Reeves and James in their answers had demanded a trial by jury. When the case was called on December 4, 1963, counsel for Reeves and James informed the judge:

"It was just called to my attention *late yesterday afternoon* that Your Honor is sitting without a jury in this matter.

"The Court: This case has been *on the non-jury calendar* since the time it was filed. When was the demand for jury trial filed?

"Mr. Hillman: With the filing of the answer, Your Honor [which had been filed November 13, 1961]." (Emphasis added.)

The trial judge ruled that the relief herein sought was equitable[1] in nature and, of course, under Rule 57 he was au-

---

5. Since equity's jurisdiction was determined at common law as of the time an action was filed, the fact that the insured had already sustained a loss on the policy by the time this case was called for trial is irrelevant to the determination of the adequacy of the Company's legal remedy. American Life Ins. Co. v. Stewart, 300 U.S. 203, 215, 57 S.Ct. 377 (1937).

If prior to trial in this case appellants had filed a counterclaim for damages under the policy—as they could have done once the judgment against the insured became final—perhaps they would have been entitled to a jury trial on the fraud issue, which would then have been common to both claims. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Dairy Queen Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). We need not consider the issue, however, since no such counterclaim was filed.

6. We must reject the suggestion that a judgment n.o.v. would have been required on this record, had a jury found for appellants, since the principal issue for the jury would have been appellants' credibility.

1. Fed.R.Civ.P. 38 preserves the right of trial by jury, but only with respect to "any issue *triable of right by a jury*." Fed.R.Civ.P. 39 provides that when a jury demand shall have been filed, the trial shall be by jury unless the parties waive or *unless "the court* upon motion or *of*

thorized to proceed with speedy hearing of an action for declaratory judgment. Jury trial was denied. It is for the court to say whether the action is legal or equitable.[2] I think the trial judge here correctly perceived that the underlying issue was equitable in nature. In that context, and for further background, we may turn to the memorandum opinion of the trial judge. After a full trial he decided basically that the appellee was entitled to a judgment declaring that the insurer was not liable under the policy issued January 14, 1960. He predicated his ultimate judgment, he said, upon the factual situation developed at the trial "plus the Court's evaluation of the credibility of the witnesses." He wrote further:

"The Court finds the testimony of the defendant Reeves that he mailed the check #2013 on July 16th absolutely untrue and a calculated falsehood. The Court further finds the testimony of the defendant Reeves as incredible and incredulous, insofar as it relates to his accounts with reference to this insurance policy and his contacts with the selling agent Sapourn.

"The Court finds in favor of the plaintiff [appellee] in this case. The Court finds that the policy had lapsed prior to the time that the defendant Reeves mailed a check in payment of the renewal premium. The Court finds as a matter of law that the reporting of the accident to a clerical employee of an insurance agent's office in the District of Columbia more than a month after the lapsing of the policy did not, by the acceptance of that report, revive or reinstate the insurance policy. The Court finds that the mailing by the defendant Reeves of a falsely-dated check in the latter part of August and the acceptance of that check

by Philadelphia clerical employees of the plaintiff company without knowledge of the accident did not revive or reinstate the policy. The Court finds that the action of the plaintiff in returning a check in the amount of defendant Reeves' misdated check to their Washington attorneys for delivery to the defendant Reeves as soon as the plaintiff company had full knowledge of the facts in this situation was a valid and proper rejection of the defendant's attempted fraudulent renewal of the policy. The Court finds that under the circumstances of this case the plaintiff is entitled to judgment declaring its non-liability under the policy issued on January 14, 1960, which policy the Court finds was never renewed by the plaintiff."

Reeves had so dated his check as to represent to the company that on that date he had signed and mailed a check in the amount of the premium, as the trier found. Actually, the check had been falsely dated and transmitted by Reeves, knowingly, willfully and after the 20-day grace period had expired. He had returned with the falsely dated check, the renewal notice which the company had sent to him. Seldom do we see a more palpable effort to perpetrate fraud.[3]

Granting that the opinion otherwise discursively touches upon points stressed by opposing counsel before the judge, it is equally obvious from this record that the carrier rescinded and disavowed upon learning of the fraud which had been practiced upon it. This was not a case where the carrier was bound to sit back and await a possible action on the policy by the insured after the injured passenger, Mary Dona, at some future date might have secured a judgment in her negligence action. Here no loss had been established and no counterclaim

---

*its own initiative finds that a right of trial by jury * * * does not exist * * *."* (Emphasis herein added.)

2. State Farm Mut. Auto. Ins. Co. v. Mossey, 195 F.2d 56, 59 (7 Cir.), cert. denied, 344 U.S. 869, 73 S.Ct. 109 (1952).

3. Discernible from the court's opinion are findings of the six essential elements giving rise to a claim for misrepresentation. POMEROY, EQUITY JURISPRUDENCE § 876 (5th ed. 1941).

based thereon had been filed. Rather, when the appellee elected to rescind, the carrier's rights here could be finally determined in a single equitable action, as was true prior to the adoption of the Declaratory Judgment Act. And certainly thereafter such a suit because of fraud, was permitted where the carrier proved it was entitled to rescind the contract.[4] The insured was entitled to a judgment which fixed the rights and obligations of the parties to that contract.

Here there was not only substantial evidence of actual fraud, as the trial judge found, but the Reeves testimony to the contrary was described as "incredible." The judge specifically noted that the Reeves testimony that the alleged renewal check had been mailed on July 16, was "absolutely untrue and a calculated falsehood." Overwhelmingly the appellee had sustained its burden of proof[5]; indeed we have before us no slightest showing that the findings of the trial judge are clearly erroneous.[6]

On the one hand the appellants tendered the argument that the policy had never been cancelled, and at the same time if cancelled, that it had been reinstated. They contended that the insurer was bound to defend both Reeves and James.

In those circumstances there was open to the insurer no adequate remedy at law if indeed the policy had been procured by fraud. The Company's recourse to equity was proper for no loss had occurred in that liability had not been established against the insured.[7] In this case there was no counterclaim[8] presenting legal issues before the court. At the stage here reached and under the circumstances, the insurer was not bound, as respected authority demonstrates, to sit back, await the pleasure of the claimant, and then raise by way of defense pleading and proof, the very grounds upon which the policy was to be deemed void and of no effect.[9] The insurer here had clearly established that its remedy at law would be ineffective.

The insurer thus was entitled to be relieved of uncertainty as to whether or when a loss might later occur; as to the possibility that witnesses and evidence essential to its proof of fraud might disappear; as to the obligation asserted against it involving the expense of investigation and defense of a suit and the maintenance of a reserve against the contingency of recovery.[10] Clearly, the fraud, if and when established, would vitiate the contract and relieve the insurer of possible liability thereunder.[11]

The trial court correctly discerned that equitable considerations required the declaratory judgment that no liability inured in a contract properly cancelled for fraud. I would affirm.

---

4. Cf. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 243, 57 S.Ct. 461, 81 L.Ed. 617 (1937). See 6 MOORE, FEDERAL PRACTICE ¶ 57.19, at 3109–3110 (2d ed. 1953).

5. 6 MOORE, FEDERAL PRACTICE ¶ 57.31 (2d ed. 1953).

6. Even if there had been a trial to a jury with a verdict for James, in the light of the findings and on the record before us, the trial judge would have been bound to grant a judgment for the insurer, n.o.v. Cf. Pittman v. West American Insurance Company, 299 F.2d 405, 409 (8 Cir. 1962).

7. Cf. Zipperer v. State Farm Mut. Auto. Ins. Co., 254 F.2d 853, 856 (5 Cir. 1958).

8. In Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), a separate trial of issues under Rule 42(b) or Rule 57 was deemed improper where it might deprive the defendant of a jury trial of issues which had been established in the counterclaim.

9. As was observed by Mr. Justice Cardozo, writing for a unanimous Court:
   "Here the insurer had no remedy at law at all except at the pleasure of an adversary. There was neither equality in efficiency nor equality in certainty nor equality in promptness. 'The remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party.' [Citations omitted.]" Amer. Life Ins. Co. v. Stewart, 300 U.S. 203, 215, 57 S.Ct. 377, 380, 81 L.Ed. 605 (1937).

10. Massachusetts Bonding & Ins. Co. v. Anderegg, 83 F.2d 622, 624, 625 (9 Cir. 1936).

11. *Id.* at 625; State Farm Mut. Auto. Ins. Co. v. Mossey, *supra* note 2.