**AMERSHAM INTERNATIONAL PLC., Plaintiff,**

v.

**CORNING GLASS WORKS, et al., Defendants.**

**No. 83–3853.**

United States District Court, E.D. Michigan, S.D.

June 15, 1984.

Neal A. Waldrop, Troy, Mich., Owen J. Murray, Merriam, Marshall & Bicknell, Chicago, Ill., for plaintiff.

---

**508**

Gregory L. Curtner, Miller, Canfield, Paddock & Stone, Detroit, Mich., Maurice M. Klee, Bridgeport, Conn., for defendants.

Alfred L. Michaelsen, William E. Maycock, Corning Glass Works, Corning, N.Y., for Corning.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This is a patent infringement action concerning Patent No. 4,366,143 (143) owned by plaintiff Amersham International PLC, a public limited company organized under the laws of the United Kingdom. This matter is before the Court on defendants' motion to stay this proceeding pending final disposition of an interference proceeding in the United States Patent and Trademark Office which defendant Corning Glass Works has recently asked the Patent Office to institute.

According to defendants, Amersham's patent claims a method for analyzing blood samples to determine the concentration of substances circulating in the blood, such as thyroid hormones. Apparently both Amersham and Corning sell disposable kits for determining the level of thyroid hormones in blood. Amersham contends that Corning's kit infringes on its patent. Patent 143 was issued to Amersham on December 28, 1982. This suit was instituted on September 13, 1983. Both parties acknowledge that negotiations to settle this matter have been on-going.

Corning contends that more than three years before Amersham submitted its application for Patent 143, Corning had independently developed essentially the same technique. Corning's work is protected by Patent No. 4,410,633, issued October 18, 1983. On December 23, 1983, some three months after this suit was instituted, Corning filed in the Patent Office its request that the Patent Office declare an interference proceeding[1] between Amersham and Corning to determine priority of the invention. Corning is now asking this Court to stay this action pending action on its request for an interference proceeding.

In their brief, defendants set forth what they perceive to be the relationship between the interference proceeding and this action.

The interference proceeding encompasses the heart of the controversy between Amersham and Corning. As discussed in detail below, the outcome of that proceeding, no matter which party prevails, will simplify the contested issues in this action, and, if Corning prevails, will bring this action to an end. Moreover, an interference is the only means by which Corning can exercise all of its rights under the patent laws, i.e., Corning's right to have issued to it those claims of the Amersham patent which Corning invented first, and thus that proceeding will have to go forward irrespective of the course of this action. Under these circumstances, it is plain that both economy to the judicial system and to the litigants supports a stay of this action.

Corning's circa 1977 work on the analysis of thyroid hormones in blood gives it both a defense in this action and the opportunity to obtain for itself those claims of the Amersham patent in suit which relate to thyroid hormone analyses. The Corning work serves as a defense under 35 USC § 102(g) which provides that a patent is invalid if "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." Defendants have specifically pleaded this defense in paragraph 9 of their Answer and Counterclaim.

The opportunity to obtain the Amersham claims for itself arises under 35 USC § 135 which is the statutory authority for interference proceedings in the Patent and Trademark Office. Significantly, with regard to the effect of an

1. An interference proceeding is an administrative proceeding initiated by the commissioner pursuant to 35 U.S.C. § 135 to determine priority of invention as between two or more applicants.

interference proceeding on this action, Section 135 specifically provides that "[a] final judgment adverse to a patentee from which no appeal or other review has been or can be taken or had shall constitute cancellation of the claims involved from the patent, and notice thereof shall be endorsed on copies of the patent thereafter distributed by the Patent and Trademark Office." That is, those claims which Amersham loses in the interference will be cancelled from its patent and thus from this action.

The central issue with regard to both the Section 102(g) defense and the interference proceeding is the question of "priority of invention," that is, as between Amersham and Corning, who made the invention first in this country. The specific purpose of an interference proceeding is to decide this question, and there can be no doubt that in view of its vast experience, the Patent and Trademark Office has acquired special expertise with regard to making this determination.

Under the statutory scheme established by Title 35 of the United States Code, the only way for Corning to exercise its right to seek Amersham's claims for itself is through an interference proceeding. That proceeding requires a determination of priority of invention, and thus, no matter who should prevail in the interference, the issues in this action will be simplified by the record and decision of the Patent Office on this central issue.

Moreover, if Corning prevails, this action will be brought to an end. This is so because the claims which Corning is seeking in the interference are all of the claims of Amersham's patent which even arguably could be alleged to be infringed by Corning's thyroid hormone analysis kit. As indicated above, under 35 USC § 135, when a patentee loses an interference, the claims in interference are cancelled from its patent. In terms of Amersham's patent, such cancellation would

end the case because Amersham would no longer have any grounds upon which to base a charge of infringement.

In short, staying this action in view of the interference proceeding will both narrow the issues in the case and provide a mechanism whereby the Patent Office's expertise regarding the issue of priority can be brought to bear on Amersham's and Corning's competing claims.

██ A motion to stay is directed to the sound discretion of the court, with the authority to grant or deny stemming from its inherent power to control its docket. *American Life Insurance Co. v. Stewart,* 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605 (1937). In support of their position, defendants have cited seven patent cases in which stays have been granted. *Filtrol Corp. v. Kelleher,* 467 F.2d 242 (9th Cir. 1972), *cert. denied,* 409 U.S. 1110, 93 S.Ct. 914, 34 L.Ed.2d 691 (1973); *ACF Industries, Inc. v. Guinn,* 384 F.2d 15 (5th Cir. 1967), *cert. denied,* 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968); *American Telephone & Telegraph Co. v. Milgo Electronic Corp.,* 416 F.Supp. 951 (S.D.N.Y. 1976); *Childers Foods, Inc. v. Rockingham Poultry Marketing Co-op, Inc.,* 203 F.Supp. 794 (W.D.Va.1962); *Research Corp. v. Radio Corp. of America,* 181 F.Supp. 709 (D.Del.1960); *Smalley v. The International Nickel Co.,* 114 U.S.P.Q. 140 (D.Del.1957); *Cover v. Schwartz,* 30 F.Supp. 261 (S.D.N.Y.1939). However, as plaintiff points out, in each case where an interference proceeding was pending,[2] the interference proceeding was pending at the time the district court action was instituted.

Plaintiff has directed this Court's attention to two cases where stays were denied where the district court action was initiated prior to the interference proceeding. *Hughes Aircraft Co. v. General Instrument Corp.,* 374 F.Supp. 1166, 1167 (D.Del. 1974); *General Foods Corp. v. Struthers*

**2.** In *Filtrol, supra,* and *Smalley, supra,* a stay of one district court action was sought pending resolution of a second district court action.

*Scientific & International Corp.,* 309 F.Supp. 161 (D.Del.1970). In this case, no interference proceeding has been declared, defendant merely having filed a request for such a proceeding. The decision whether to declare such a proceeding is discretionary with the patent office. Thus, if the motion to stay is granted, the priority of invention issue present in this case would *not* be before any tribunal for decision.

At argument, defendants presented the Court with a third alternative. Defendants proposed that this action remain pending before this Court but that discovery be limited to the issue of priority. Presumably defendants would then ask this Court to grant the stay if the commissioner declared an interference proceeding. However, as noted above, defendants cited no authority supporting a stay where the interference proceeding was declared *subsequent to* the institution of a lawsuit. Thus this third alternative is viable only if this Court would be inclined to grant a stay at some future time.

This Court cannot find any justification for granting a stay in this case. At present, there is no duplication of effort. Only the possibility of such duplication exists. There is no reason that this action should not go forward. This Court would be hard pressed to justify a stay of plaintiff's action, delaying resolution of the action it filed in this forum, so as to allow defendants the time to await the Patent Office's decision on the request for an interference proceeding. Even if such a proceeding is declared, plaintiff would have the opportunity to challenge the propriety of the proceeding before the priority issue is considered on the merits. This Court finds that it would be inappropriate to grant a stay of this action in light of the uncertainty of the interference proceeding. It is not known if such a proceeding will be declared or will survive a challenge by plaintiff if so declared. Nor is the Court aware of the time necessary for resolution of such a proceeding.

Therefore, for the reasons stated herein, defendants' motion for a stay will be denied. An appropriate order shall be submitted.