Slip Op 10 - 40

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| DIAMOND SAWBLADES MANUFACTURERS' COALITION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: Musgrave, Senior Judge |
| | : | Court No. 06-00246 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| BEIJING GANG YAN DIAMOND PRODUCTS COMPANY AND GANG YAN DIAMOND PRODUCTS, INC., WEIHAI XIANGGUANG MECHANICAL INDUSTRIAL CO., LTD., and QINGDAO SHINHAN DIAMOND INDUSTRIAL CO. LTD., | : | |
| | : | |
| Defendant-Intervenors. | : | |

**OPINION AND ORDER**

[Denying Plaintiff's motion to lift stay.]

Dated: April 15, 2010

*Wiley Rein, LLP, (Daniel B. Pickard)* for the plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Franklin E. White*, *Jr*., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Delisa M. Sanchez*); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (*Carrie A. Dunsmore*), for the defendant U.S. Department of Commerce.

*Barnes, Richardson & Colburn, (Jeffrey S. Neely)* for the defendant-intervenors Beijing Gang Yan Diamond Products Co. and Gang Yan Diamond Products, Inc.

Musgrave, Senior Judge:  Plaintiff Diamond Sawblades Manufacturers' Coalition ("DSMC") initiated this action in July 2006 to challenge certain aspects of the determination issued by Defendant International Trade Administration, United States Department of Commerce ("Commerce" or "the Department") finding that imports of diamond sawblades from the People's Republic of China are being sold, or likely to be sold, at less-than-fair-value ("LTFV"). *See Final Determination of Sales at Less Than Fair Value and Final Partial Affirmative Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the People's Republic of China*, 17 Fed. Reg. 29303 (May 22, 2006) ("*Final Results*").  Pursuant to a court order, the proceedings in this matter have been stayed since October 2006; DSMC now moves to lift the stay of proceedings.  Defendant United States opposes DSMC's motion, as do Defendant-Intervenors Beijing Gang Yan Diamond Products Company and Gang Yan Diamond Products, Inc. ("Defendant-Intervenors").  For the reasons set forth below, the motion will be denied.

On October 12, 2006, this court granted DSMC's consent motion to stay the proceedings in this action pending the outcome of Court No. 06-00247, a related action in which DSMC challenged the negative-injury determination of the U.S. International Trade Commission ("ITC") in the same antidumping investigation.  *See Diamond Sawblades and Parts Thereof from China and Korea*, Investigation Nos. 731-TA-1092 and 1093 (Final), 71 Fed. Reg. 39128 (ITC July 11, 2006).  As noted by DSMC in that motion, a stay was necessary because "a final court decision upholding the ITC's negative determination would affect the justiciability of the instant action by

rendering the action, and any decision pursuant thereto, moot." Pl.'s Oct. 4, 2006 Consent Mot. to Stay Proceedings at 1.

The court did not uphold the ITC's negative injury determination, but instead remanded the matter to the ITC for further explanation and for reconsideration of certain issues. *Diamond Sawblades Mfrs.' Coalition v. United States*, Slip Op. 08-18, 2008 WL 576988 (CIT Feb. 6, 2008). On remand, the ITC reversed its position and found that the domestic industry was threatened with material injury by reason of subject imports; the court affirmed the ITC's (now affirmative) remand determination in a final decision dated January 13, 2009. *See Diamond Sawblades Mfrs.' Coalition v. United States*, Slip Op. 09-5, 2009 WL 289606 (CIT January 13, 2009) (*appeal docketed*, Mar. 31, 2009, *argued* Feb. 2, 2010) ("*Diamond Sawblades II*"). In a subsequent decision related to *Diamond Sawblades II*, the court granted DSMC's request for mandamus relief and ordered the Department to "issue and publish antidumping duty orders and order the collection of cash deposits on subject merchandise" in accordance with the ITC's affirmative determination. *Judgment, Diamond Sawblades Mfrs.' Coalition v. United States*, 33 CIT __, 650 F. Supp 1331 (2009) (*appeal docketed*, Oct. 15, 2009) ("*Diamond Sawblades mandamus action*"). As the above citations indicate, both *Diamond Sawblades II* and the *Diamond Sawblades mandamus action* are currently pending appeal at the United States Court of Appeals for the Federal Circuit ("Federal Circuit").

A decision having been issued by this court, DSMC now moves to lift the stay, arguing that there is "no reason" to further delay the proceedings in this matter. Although it is not clear, DSMC appears to contend that it is "negatively impacted" by the stay because it delays the

potential relief that would be in order if its challenge to the *Final Results* proves successful. Pl's. Mot. at 3. The government opposes the motion on the ground of judicial economy in light of the pending appeal of *Diamond Sawblades II,* and further notes that the appellate decision in the *Diamond Sawblades mandamus action* may also affect the outcome of this matter. Def's Resp. at 2. Defendant-Intervenors oppose lifting the stay on similar grounds, adding that a stay in this matter would be consistent with the stay applied to the related actions challenging the Department's LTFV determination on imports of diamond sawblades from the Republic of Korea.

### *Discussion*

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). A court may properly determine that "it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California*, 593 F.2d 857, 863-64 (9th Cir. 1979).

However, the party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255. How and when a stay is imposed is left to the court's discretion; in exercising that discretion, a court must "'weigh the competing interests and maintain an even balance,'" giving due consideration to the interests of the litigants, the court, and the public. *Tak Fat Trading Co. v. United States*, 24 CIT 1376, 1377, 2000 WL 1825396 at **1 (CIT 2000) (*quoting Landis, supra*). A stay that fails to properly balance the

relevant interests, *e.g.*, a stay "of indefinite duration in the absence of a pressing need," is likely to be deemed an abuse of discretion. *Id. See Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (holding that trial court's stay was an abuse of discretion because pending actions "may take years to complete" and because proceedings on liability could not be justifiably stayed "merely because a precise determination of damages is not possible at this moment . . .").

In this matter, the need for the stay (or, more accurately, the need to continue it) is essentially the same need that compelled DSMC to move for a stay in the first place: Namely, that a pending court decision (at this point the Federal Circuit's review of *Diamond Sawblades II* ) has the potential to render this action and any decision issued thereon a nullity. *See* 19 U.S.C. § 1673d(c). In some respects, this situation is the converse of that presented in *Cherokee Nation*, where the trial court (impermissibly) stayed proceedings "merely because a precise determination of damages" had not yet been determined. *Cherokee Nation*, 124 F.3d at 1416. That is, the current challenges to the estimated dumping margins set forth in *Final Results* are essentially over *rate* of antidumping duties that the importers will ultimately pay, but the suit now awaiting a decision at the Federal Circuit will establish conclusively whether antidumping duties should be *paid at all*. Accordingly, because of the potential impact that the Federal Circuit's decision in *Diamond Sawblades II* may have on this action, the court must conclude there is a "pressing need" to continue the stay.

Hence, if the stay is lifted and the litigation in this matter proceeds, the court and each of the litigants (including DSMC) risk expending substantial resources on litigation that may ultimately prove to be irrelevant. By its motion DSMC has essentially indicated that, in order to

obtain more quickly the possible benefits a successful challenge may bring, it is willing to take that risk. Hence, assuming DSMC would prevail on the underlying merits, allowing the stay to remain frustrates DSMC's interests by delaying the potential benefits that may ensue from the higher cash deposits/antidumping duties collected from importers. Unlike DSMC however, the other parties to this action, including the Chinese importers (who, like DSMC, may benefit from proceeding with its own challenge to the *Final Results*) and the Department, indicate that they have a greater interest in avoiding potentially unnecessary litigation. Although the court is neutral, it does have an interest in the efficient use of judicial resources which it is obliged to consider.

On balance, the court finds that the interests favoring the stay outweigh DSMC's interests in having the stay lifted for three reasons. First, the stay is likely to be of limited duration. The Federal Circuit's case disposition statistics indicate a median docketing-to-disposition time of approximately one year for cases from this court, making a ruling on *Diamond Sawblades II* likely in a matter of months. *See Statistics*, http://www.cafc.uscourts.gov/pdf/MedianDispTime(table) 00-09.pdf. (last visited Apr. 15, 2010). Second, although there may be "a fair possibility" that the stay will negatively impact DSMC, the degree and likelihood of the negative impact is speculative. A decision on the merits of this case may indeed result in higher cash deposits, but given the parallel challenges instituted by the importers, it may also result in lower cash deposits. Finally, the fact that DSMC is a party to the action on appeal mitigates in favor of continuing the stay, as it is not being forced to "wait upon the outcome of a controversy to which [it] is a stranger." *Landis*, 299 U.S. at 255. *See American Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) (noting that "[i]n the exercise of a sound discretion [a court] may hold one lawsuit in abeyance to abide the outcome of another,

especially where the parties and the issues are the same."). Accordingly, the court must conclude that conditions favor continuance of the stay pending a final and conclusive decision by the Federal Circuit in *Diamond Sawblades II*.[1]

### *Conclusion*

In consideration of the foregoing, the court concludes that a proper balance of interests favors continuation of the current stay. Accordingly, this matter will remain stayed pending the issuance of a conclusive decision in *Diamond Sawblades II*. The plaintiff's motion is denied.

**SO ORDERED.**

/s/   R. Kenton Musgrave
R. KENTON MUSGRAVE, Senior Judge

Dated: April 15, 2010
        New York, New York

---

[1] Although the Federal Circuit's decision in the *Diamond Sawblades mandamus action* may also affect the outcome of this matter, the court is unconvinced that the potential impact of that case would justify extending the stay beyond what is indicated here.