**UNITED STATES of America, Plaintiff-Appellee,**

v.

**1980 RED FERRARI, VIN NO. 9A0034335, OREGON LICENSE NO. GPN 835, Defendant,**

**Brian R. Oliver, Claimant-Real-Party In-Interest-Appellant.**

No. 86–2158.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1987.

Decided Sept. 3, 1987.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 18, 1987.

Doron Weinberg, San Francisco, Cal., for claimant-real-party in-interest-appellant.

Michael D. Howard, San Francisco, Cal., for plaintiff-appellee.

Before GOODWIN, BEEZER and THOMPSON, Circuit Judges.

GOODWIN, Circuit Judge:

Brian Oliver, who claims to have purchased a 1980 red Ferrari automobile from an attorney with whom he had been living episodically for several years, appeals a forfeiture order entered in favor of the government on cross-motions for summary judgment. We affirm.

The government asserted a statutory forfeiture against the vehicle because it was "proceeds traceable to" money or other things of value exchanged for controlled substances, pursuant to 21 U.S.C. § 881(a)(6). Arlene West, the attorney from whom Oliver obtained the Ferrari, did not testify. She had formerly represented one Felix Mitchell, a convicted drug dealer and earlier possessor of the automobile.[1] In 1983, the automobile came into the possession of West. These facts are undisputed.

█ Without the benefit of testimony from West, Oliver attempted to defend against the forfeiture by contending that the government had not made a sufficient prima facie case to shift to him the burden of proving that he was an "innocent owner" within the meaning of section 881(a)(6). The assertion that the burden rests with the government is incorrect. The provision for "innocent owners" reads in pertinent part:

[N]o property shall be forfeited under this [section], to the extent of the interest of an owner, by reason of any act or omission *established by that owner to have been committed or omitted without the knowledge or consent of that owner.*

21 U.S.C. § 881(a)(6) (emphasis added).

Thus, the language on its face makes clear that it is the owner's burden to establish a lack of knowledge or consent with respect to events forming the basis of the forfeiture action. Indeed, under section 881(a)(6), "the government need not prove, and the district court need not find, that the claimant *had* actual knowledge. Rather, it is the claimant's responsibility to prove the *absence* of actual knowledge." *United States v. Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d 895, 907 (11th Cir.1985) (emphasis in original), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

Congress, in an attempt to describe events that would support a valid forfeiture under the statute, further explained that property should not be subject to section 881(a)(6) forfeiture unless the owner knew or consented to the fact that:

1. the property was furnished or intended to be furnished in exchange for a controlled substance in violation of law,

2. the property was proceeds traceable to such an illegal exchange, or

3. the property was used or intended to be used to facilitate any violation of Federal illicit drug laws.

Psychotropic Substances Act of 1978, Joint Explanatory Statement of Titles II and III, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Admin. News 9496, 9522–23.

In this action the district court granted summary judgment in favor of the government. As a consequence, we must apply a de novo standard of review and view all factual inferences from the perspective of

---

1. *United States v. Mitchell,* No. CR–83–0130–MHP (N.D.Cal. June 13, 1985), *vacated,* No. 85–1169 (9th Cir. January 7, 1987). *See generally,*

*United States v. Patterson,* 819 F.2d 1495, 1500, 1511 n. 10 (9th Cir.1987).

Oliver. *Yartzoff v. Thomas*, 809 F.2d 1371, 1373 (9th Cir.1987). However, where a party opposing summary judgment fails to produce "substantial factual evidence to combat summary judgment and there is 'overwhelming evidence' favoring the moving party, it may be unreasonable to draw an inference contrary to the movant's interpretation of the facts, and therefore a summary judgment would be appropriate even when [state of mind] is at issue." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir.1985) (citations omitted).

Oliver offers two grounds for reversal. First, he contends that the government failed to prove that the Ferrari represented proceeds of an illegal drug transaction or that the Ferrari was employed or intended to be employed in any violation of federal drug laws. Second, Oliver contends that at the time he obtained the Ferrari from West he had no knowledge or reasonable cause to believe that Mitchell was the source of the funds originally used to purchase the Ferrari.

■ There is abundant record evidence supporting the district court's determination that the Ferrari represented forfeitable property. The Ferrari was clearly traceable to Mitchell's unlawful activities. First, a woman identifying herself as Penale Rogers bought the car for two cash payments, $23,900 down, and another $26,280 later. Penale Rogers is a name used by Penny Williams, also known as Penny Harris, a friend of Mitchell. The Ferrari was registered in Penale Rogers' name at a fictitious Portland, Oregon, address. Penale Rogers actually lived in a house in Hollywood, California, which was paid for by Mitchell. Police photographs show Rogers and Mitchell in front of that house with a red Ferrari and a brown Rolls Royce in the garage. Second, Oliver failed to present any significant evidence of a non-criminal source of funds for Mitchell or his cohorts. Third, on one occasion the Ferrari was stopped by law enforcement officers

and $34,000 in currency was discovered in it.

The next question is whether the district court could dispose of Oliver's "innocent owner" defense without an evidentiary hearing into the extent of his knowledge of the vehicle's connection to Mitchell.

■ At the outset, it is important to note that we need not determine whether the district court correctly found that Oliver actually knew any particular facts regarding Mitchell's relationship to the Ferrari. The burden of establishing a lack of such knowledge is on Oliver. 21 U.S.C. § 881(a)(6).[2]

The circumstantial evidence of knowledge is compelling. Oliver is a licensed private investigator. Prior to becoming an investigator, Oliver was employed as a Berkeley police officer for twelve and one-half years. He said that he worked only briefly on the narcotics detail. However, he also stated that while he was involved in law enforcement, Mitchell's name was very familiar to him in connection with alleged involvement in heroin trafficking.

After April 1978, West and Oliver commenced a personal relationship and subsequently lived together off and on. West was Mitchell's lawyer. In December 1981, West retained Oliver in his capacity of private investigator to assist in the preparation of the defense in a homicide case then pending against Mitchell. In February 1983, Mitchell was indicted on heroin-related charges and Oliver was again retained by West to provide investigative services. From February to July 1983, Oliver worked closely and intensively with West and Mitchell in connection the preparation and presentation of Mitchell's defense to the charges.

At some point during the defense effort, Oliver, at West's request, went to Los Angeles to pick up the Ferrari and drive it to the San Francisco area. When Oliver returned to Oakland with the Ferrari, he insured it in Mitchell's name with West

**2.** Application of this burden to the pleadings presented in this case also means that we need not reach the question whether property purchased by a bona fide purchaser from an attor-

ney who has taken such property as valid attorneys' fees may be entitled to the property without risk of civil forfeiture.

listed as a second driver and billed the first six months' insurance premium to the "Mitchell account" of West's law practice. Oliver then "bought" the car by paying $24,000 to West and foregoing repayment on an existing $3,000 debt.

Oliver attempts to establish his lack of knowledge of the ownership history of the Ferrari solely through his deposition testimony.[3] In his deposition, after first claiming that it was just a "guess," Oliver stated that he "understood" that the car had been received by West as part payment of attorney fees on the Mitchell case. This "understanding," even if correct, does not sufficiently plead an innocent owner defense to get beyond summary judgment. Oliver's independent knowledge of Mitchell's close relationship to the vehicle is unassailably established by the facts.

The district court, after an initial scrutiny of the inferences that reasonably could be drawn, concluded that Oliver could have avoided knowledge of the connection between the illegal acts committed by Mitchell and the Ferrari only by "sticking his head in the sand." We agree. By virtue of his social and professional entanglement in Mitchell's legal affairs, Oliver was at least on notice of Mitchell's connection to the vehicle. *Compare United States v. One 1973 Buick Riviera Automobile*, 560 F.2d 897, 901 (8th Cir.1977) (permitting forfeiture under section 881(d) where owner was "on notice of" possible narcotics activity involving the vehicle).

In summary, Oliver's evidentiary presentation to the district court in no way constituted significant probative evidence warranting further proceedings. *See Barnes*, 759 F.2d at 681. The district court correctly concluded that an evidentiary hearing as to the extent of Oliver's knowledge of the vehicle's prior ownership would be a waste

of time and that summary judgment was warranted.

Affirmed.

---

3. Oliver presented no significant evidence other than his deposition testimony to combat the government's motion for summary judgment. That testimony itself was incredible and contradictory. For example, at one point, Oliver stated that he believed the Ferrari belonged to a man named Pernell Rogers and that he did not believe it belonged to Mitchell while at another point Oliver asserted that he thought West took the car in exchange from Mitchell as attorney's fees.

No evidence was offered reflecting the understanding of the attorney West as to the ownership of the vehicle.