**INTERSTATE CIGAR CO. and ICC Indiana Warehouse, Incorporated, Plaintiffs–Appellants,**

v.

**The UNITED STATES of America, Defendant–Appellee.**

No. 90–1848.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1991.

Decided March 19, 1991.

David J. Backer, Backer & Backer, Indianapolis, Ind., Edward M. Joffe, Peter W. Fudali, Sandler, Travis & Rosenberg, Miami, Fla., for plaintiffs-appellants.

Winfield Ong, Office of the U.S. Atty., Indianapolis, Ind., Jeffrey B. Chasnow, Dept. of Justice, Consumer Litigation, Washington, D.C., for defendant-appellee.

Before BAUER, Chief Judge, POSNER and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

The Interstate Cigar Company and its subsidiary, ICC Indiana Warehouse, Inc. (collectively "Interstate"), filed a complaint in the United States District Court for the Southern District of Indiana demanding the return of seized property. This property, 6,058 bottles of the prescription drug Midrin, was taken by agents of the United States Custom Service on July 14, 1989, pursuant to a valid search warrant. Jurisdiction was based on Rule 41(e), Federal Rules of Criminal Procedure, and on the district court's general supervisory powers over federal law enforcement officers. The district court properly exercised such jurisdiction entirely on equitable grounds.[1] Nevertheless, the district court upheld the Government's possession of the Midrin, finding as a matter of law that Interstate failed to show that no adequate remedy at law existed; i.e., Interstate could recover legal damages due to the seizure. We disagree with the district court's decision. Because we are unable to determine from the record before us whether the Government can defend its continued possession of the property, we reverse the district court and remand the case for a hearing at which the Government shall have an opportunity to provide more persuasive reasons for its action.

On June 1, 1989, Interstate, a wholesaler of health aids and pharmaceutical products, purchased a large quantity of the drug Midrin from a supplier in Louisiana. Interstate made an advance payment to the supplier by wire transfer in the amount of

---

1. The Seventh Circuit recognizes "an independent cause of action for return of property based on the general equitable jurisdiction of the federal courts." *Mr. Lucky Messenger Service, Inc. v. United States,* 587 F.2d 15, 16–17 (7th Cir.1978).

$146,781.25. Approximately four weeks later, 7,355 bottles of Midrin were shipped to Interstate by the supplier. On July 13, 1989, a federal magistrate issued a search warrant authorizing the seizure of the Midrin from Interstate's warehouse in Indianapolis. Probable cause for the seizure was based on an affidavit of a United States Customs agent stating that Interstate's supplier obtained the drugs by fraud. Customs agents executed the warrant the following day. The Government continues to maintain possession of the drugs even though no indictments have been obtained against anyone connected with the Midrin, nor has the Government sought the forfeiture of the drugs. The Midrin has an expiration date of April 1991, at which time the drug may lose most of its value. The Government concedes that Interstate is not a target of any criminal investigation.

■ The Government offers two arguments to defend its continued possession of the Midrin. First, the Government maintains that Interstate has "an obvious legal remedy" against the supplier of the pharmaceuticals that precludes the granting of equitable relief. The Government points out that Interstate holds a warranty from its supplier stating that the supplier did not acquire the property fraudulently or in violation of law. The supplier further promises that it will indemnify Interstate against any loss or expense resulting from the breach of the warranty. Thus, the Government concludes that this remedy at law, the right of Interstate to sue for damages on the warranty, justifies the district court's entry of summary judgment for the Government. Second, the Government maintains that, because the Midrin constitutes fruits and instrumentalities of the crime of wire fraud, the Government has specific interests in holding the property. The Government offers two examples of these "specific interests": the need to prevent further crimes from being committed with the Midrin, and the desire to protect the interests of the victim from whom it was fraudulently obtained.

We are not persuaded. First, an equitable remedy is appropriate here. In *Mr. Lucky Messenger Service*, we outlined the factors a court must consider before granting equitable relief to a party seeking the return of its seized property: "These factors are whether the plaintiff has an individual interest in and need for the material whose return it seeks; whether it would be irreparably injured by denial of the return of the property; and whether it has an adequate remedy at law for redress of its grievance." 587 F.2d at 17. There is no dispute concerning the first two factors. The district court held, and the government argues, that Interstate failed to satisfy the third factor. Both have misapplied the principles of equity.

■ In order to preclude the granting of relief by the equity court, "an available remedy at law must be plain, clear and certain, prompt or speedy, sufficient, full and complete, practical, efficient to the attainment of the ends of justice, and final." 27 Am.Jur.2d *Equity* § 94 (1966) (citations omitted). It has long been a principle of equity jurisprudence that the mere existence of a possible remedy at law is not sufficient to warrant denial of equitable relief. *See American Life Insurance Co. v. Stewart*, 300 U.S. 203, 214, 57 S.Ct. 377, 380, 81 L.Ed. 605 (1937) ("Where equity can give relief plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law.") (citations omitted). As the Supreme Court declared more than a century ago, "The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances." *Gormley v. Clark*, 134 U.S. 338, 349, 10 S.Ct. 554, 557, 33 L.Ed. 909 (1890).

With these principles in mind, we find that Interstate's possible contract remedy against the supplier of the Midrin is not adequate to deprive Interstate of an equitable remedy. Two reasons inform our determination. First, a civil suit by Interstate against its supplier (who is allegedly the target of a criminal investigation) will surely not provide as clear or certain a

remedy as an action in equity. *Cf. Dawson v. Kentucky Distilleries Co.*, 255 U.S. 288, 296, 41 S.Ct. 272, 275, 65 L.Ed. 638 (1921) ("It is well settled that if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit.") (citations omitted). Second, it is not disputed that Interstate has no adequate remedy at law against the Government, which is the party inflicting the injury on Interstate. We find it rather absurd that the Government, who seized the Midrin and has held it for over eighteen months without issuing a single indictment, should claim that Interstate may not sue the Government in equity because it can sue another party for damages. *See generally* C.J.S. *Equity* § 25 (1965) ("[To be adequate], the remedy at law must exist against the same person against whom the relief in equity is sought."). We will not support a position that only serves to shield the Government from justifying its continued possession of property validly purchased by Interstate.

■ Based on the record before us, we are also unable to find merit in the Government's second argument—that its seizure is justified by the fact that the Midrin constitutes fruits and instrumentalities of a crime. As we outlined above, the Government contends that the continuing nature of its criminal investigation requires that it retain the Midrin in order to prevent further crimes from being committed and to protect the interests of the supplier's victim. We do not find these reasons compelling. We are unable to discern how further crimes could be committed with the drugs by simply returning them to Interstate. Moreover, because Interstate apparently holds good title to the Midrin, the Government's retention of the drugs does nothing to protect the victim of the supplier's fraud. Because the supplier allegedly obtained the Midrin by fraud, and then sold the Midrin to Interstate as a bona fide purchaser for value, Interstate presumably holds good title to the Midrin under Indiana law. *See Fryer v. Downard*, 134 Ind.App. 226, 187 N.E.2d 105, 107 (1963) ("Indiana courts have consistently held that legal title passes to a defrauding buyer. This title is not void; it is voidable, which means that when title gets into the hands of a bona fide purchaser for value then he will prevail over the defrauded seller."). This result has not been disputed by the Government. If Interstate holds good title, then the supplier's victim will be unable to recover the Midrin. Thus, the Government's desire to protect the interests of the supplier's victim is neither relevant nor appropriate.

■ More fundamentally, once equitable jurisdiction has been established, Interstate, as the titled owner of the Midrin, bears no burden to show why the seized property should be returned. On the contrary, it is the Government's obligation to justify its retention of Interstate's property. *See Mr. Lucky Messenger Service*, 587 F.2d at 17 ("The critical inquiry [in this challenge to a government seizure of the plaintiff's property] is whether the Government has an adequate justification for withholding the plaintiff's $65,000 for over seventeen months without bringing any charges against the plaintiff.") With the scant record before us, we are unable to determine if the Government can adequately defend its refusal to return the Midrin to Interstate. The Government will not be permitted to seize private property and then simply retain that property without any demonstration that the property is somehow necessary to the investigation, even if the seizure was executed pursuant to a valid search warrant. To retain possession of the Midrin, the Government must demonstrate a specific nexus between the seized property and the continuing criminal investigation. The Government must show why it needs to retain 6,058 bottles of Midrin in order to pursue Interstate's supplier.

For the foregoing reasons, we REVERSE the district court's grant of summary judgment for the Government. We REMAND this case to the district court to afford the Government an opportunity to defend its continued possession of the Midrin, a task which appears rather formidable from the record before us.