952 F.2d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
Victor Sherman, Claimant-Appellant,
v.
U.S. CURRENCY, $584,091.00, Defendant.
 No. 90-56179.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 8, 1991.
Decided Jan. 13, 1992.
 
 Before SNEED, BOOCHEVER and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This case involves exclusion of attorney's fees from forfeiture under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881 (1988). Victor Sherman seeks to exclude $18,350 as attorney's fees from $584,091 seized as drug money. The district court denied his claim and ordered all the money forfeited to the United States. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Los Angeles Deputy Sheriffs seized 30 kilograms of cocaine and $584,091 as a result of an investigation of several men, including Carlos Arbelez, suspected of clandestine drug activities. The officers found the cocaine in one house, and $565,000 in cash in another. In Arbelez' apartment, they found the $18,350 which is the subject of this appeal.
 
 
 4
 Following Arbelez' arrest and the seizure of the money, he hired Victor Sherman, the claimant, to represent him in exchange for an assignment of the $18,350 as attorney's fees. Arbelez ultimately pleaded guilty to conspiracy to launder drug money for a Colombian drug organization.
 
 
 5
 Sherman testified that he represented Arbelez and agreed to take the money as a fee because he believed Arbelez' assertions that the $18,350 did not come from drug trafficking or money laundering activities. Sherman further testified he did not believe that Arbelez' apartment was a stash house for drug money, since a large sum of money was found at another house. According to Sherman, this suggests that the $18,350 was Arbelez' separate, legitimately acquired money. Sherman admits that he knew Arbelez was involved in drug laundering. He testified that he thought, however, that Arbelez had yet to be paid by the drug organization.
 
 
 6
 During Arbelez' arrest, ledgers were seized from his apartment. Arbelez admits to preparing the ledger sheets, and receiving a percentage of the money he laundered. A United States Customs officer testified that the ledgers recorded over a million dollars in drug transactions. Cryptic entries appear to indicate payments were made to Arbelez. No specific entries, however, clearly show payments to Arbelez of, or totaling, $18,350.
 
 
 7
 Arbelez testified that he did not earn any money in the United States. He stated his plans here were to purchase an electronic sock machine, but he admits he never looked for one. He testified that he brought $3,000 with him from Colombia, and raised $23,000 from the sales in Colombia of his wife's clothing accessories business and of some cattle. On reaching the United States, he said he received the balance of the money through a Colombian exchange house representative in Los Angeles. To support his statements, Arbelez provided the Colombian registration documents of "Almacen el Mundo del Adorno Ltda.," apparently his wife's business. Sherman presented no documentary evidence that the business or cattle were sold, or that Arbelez received money from the Colombian exchange house.
 
 
 8
 After the underlying criminal trial, the government withdrew its criminal forfeiture complaint. It then filed a civil forfeiture complaint for $584,091 pursuant to 21 U.S.C. § 881. Sherman then filed a claim to exclude $18,350.
 
 
 9
 Following an evidentiary hearing, the district court found that there was probable cause to believe the $18,350 was traceable to drug activity, and also that Sherman presented insufficient evidence to establish a legitimate source for the money. In addition, the court found that Sherman failed to show the absence of actual knowledge essential to support the "innocent owner" exception. Sherman timely appeals.
 
 
 10
 The district court's finding of probable cause to believe the money is proceeds of narcotics trafficking is reviewed de novo. United States v. Padilla, 888 F.2d 642, 643 (9th Cir.1989). Legal questions concerning the relation back doctrine, the law of assignment, and the "innocent owner" exception are reviewed de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc) (exigent circumstances), cert. denied, 469 U.S. 824 (1984).
 
 II
 
 11
 Sherman first argues that the district court erred in finding probable cause to believe the $18,350 was traceable to drug activity. The forfeiture provisions of the Controlled Substances Act, 21 U.S.C. § 881, provide for the forfeiture of money used or intended to be used in exchange for illegal controlled substances. Before money may be forfeited, the government must demonstrate probable cause to believe that the money was involved with illegal drug transactions. 19 U.S.C. § 1615 (1988). If the government makes this showing, the burden then shifts to the claimant to demonstrate, by a preponderance of the evidence, a legitimate source for the money. Id.
 
 
 12
 We apply an "aggregate of facts" test to find probable cause for forfeiture. United States v. $5,644,540.00 in U.S. Currency, 799 F.2d 1357 (9th Cir.1986). This finding can be supported by less than prima facie proof, but requires more than mere suspicion. United States v. One 56-Foot Motor Yacht Named the Tahuna, 702 F.2d 1276, 1282 (9th Cir.1983). The government met its burden. Taken together, Arbelez' conduct while under surveillance, the ledger sheets, the money and the cocaine establish a sufficient link between the $18,350 and drug activity. The fact that the agents found the money but no drugs at Arbelez' apartment is relevant, but does not sufficiently undercut the aggregate of facts establishing a connection between the money and drug activity. See United States v. Padilla, 888 F.2d 643, 644 (9th Cir.1989) (finding probable cause where police officers found $40,000 and no drugs in family's house).
 
 
 13
 Sherman did not meet his burden of proving a legitimate source of the $18,350. Sherman relates Arbelez' statements about his income and points to "certain documentation" to support those statements. This documentation consists only of Colombian business registration papers. These papers bear little on whether any of the money in the apartment was proceeds of a business sale. Given Arbelez' testimony, it is not unreasonable to expect documentary evidence to account for at least some of the $23,000 that Arbelez said he obtained in Colombia and received through the exchange house in Los Angeles.
 
 
 14
 The government established probable cause to believe the $18,350 is linked to drug activity, and Sherman failed to establish a legitimate source for it. Accordingly, we affirm the district court's finding that the money is subject to forfeiture.
 
 III
 
 15
 Sherman next argues that he is entitled to the $18,350 because he qualifies as an "innocent owner" under section 881(a)(6).[1] The government counters that, not only is Sherman not an innocent owner, but also that the exception is unavailable to him for two reasons. We consider first the government's two arguments as to why, as a matter of law, the exception is unavailable to Sherman.
 
 A. Relation Back
 
 16
 The government argues that the relation back provision of section 881(h) negates the possibility of Sherman being an innocent owner.[2] The government contends that title to the $18,350 passed to the United States before Arbelez assigned it to Sherman. The government's contention is spurious. Its interpretation would eviscerate the innocent owner exception, since an innocent owner could never successfully claim seized property.
 
 B. Assignment
 
 17
 The government next argues that Sherman cannot assert innocent ownership, because as Arbelez' assignee, he has no greater rights than Arbelez. Arbelez did not have title to the money and, therefore, the government argues, he could not assign ownership to Sherman. Legislative history to the statute states otherwise: "The term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." H.R.Rep. No. 95-1193, 95th Cong., 2nd Sess., Joint Explanatory Statement, reprinted in 1978 U.S.C.C.A.N. 9522. The government's interpretation contradicts the intention of Congress in promulgating the innocent owner exception.
 
 C. Application
 
 18
 The district court found that although the innocent owner defense was available to Sherman, Sherman did not meet the standard required by the exemption. Sherman argues that the district court misapplied the standard, holding him to an objective rather than a subjective standard of knowledge. We disagree. The district court applied the correct, actual knowledge standard.
 
 
 19
 In this circuit, " 'the government need not prove, and the district court need not find, that the claimant had actual knowledge. Rather, it is the claimant's responsibility to prove the absence of actual knowledge.' " United States v. 1980 Red Ferrari, 827 F.2d 477, 478 (9th Cir.1987), citing United States v. Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d 895, 907 (11th Cir.1985), cert. denied, 474 U.S. 1056 (1986). This was the standard correctly applied by the district court.
 
 
 20
 As in Red Ferrari, "[the claimant] could have avoided knowledge ... only by 'sticking his head in the sand' ... He was at least on notice of [the defendant's] connection to the [forfeitable property]." Id. at 480. It was not reasonable for a person of Sherman's background to believe, without some concrete proof, that the funds came from an innocent source. Sherman's "proof" consists of Arbelez' statements and the inconclusive business registration papers. He asserts that he believed his client's descriptions of his income source. Sherman does not prove he lacked knowledge of a drug connection by merely stating that he believed Arbelez. As the district court found, absent any corroboration of Arbelez' contention that the money came from sales of cattle, his wife's business, and through a Colombian exchange house representative, Sherman did not meet his burden of proving an absence of knowledge.
 
 
 21
 The district court did not err in finding that Sherman was not an innocent owner.
 
 IV
 The judgment of the district court is
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The innocent owner exception reads:
 "[N]o property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6) (1988).
 
 
 [2]
 This provision reads as follows: "All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. 881(h) (1988)