**UNITED STATES of America,**

v.

**Timothy BLUITT.**

**No. CR–92–0001 WHO.**

United States District Court,
N.D. California.

Oct. 6, 1992.

John A. Mendez, U.S. Atty., Theresa J. Canepa, Asst. U.S. Atty., John W. Kennedy, Asst. U.S. Atty., San Francisco, CA, for plaintiff.

David M. Dudley, Los Angeles, CA, for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

The government has moved for reconsideration of the order issued by Magistrate Judge Claudia Wilken on August 7, 1992, ordering the government to return a 1987 Buick Royal Turbo Coupe, VIN number 1G4GJ1172HP450521, to defendant Timothy Bluitt's attorney, David M. Dudley.[1] After

---

1. The vehicle has also been described to the Court as a Buick Grand National (GNX), Califor-

reviewing the record *de novo*, considering the magistrate judge's order, reviewing the briefs, and hearing oral argument on September 3, 1992, the Court affirms the magistrate judge's order and orders the government to return the vehicle, for the reasons hereinafter stated.

## I.

Bluitt is one of what is now a group of seventeen criminal defendants who have been indicted for a variety of drug-related offenses. He retained Dudley for his defense on December 24, 1991. Dudley declares that at that time Bluitt transferred the Buick to him as his retainer. Based on that payment, Dudley has been representing Bluitt to date. Dudley took possession of the vehicle on March 25, 1992, by arranging to have the vehicle towed to Los Angeles by the W.T. Towing Company. He asked the towing company to take the vehicle to a garage for detailing work by a Henrick Zovelian. On March 31, 1992, while driving the Buick, Zovelian was stopped by Glendale police officers for speeding and driving with expired registration tags. After checking the license plate number through the National Crime Information Center, the police learned that the Federal Bureau of Investigation ("FBI") had requested seizure of the vehicle and, accordingly, they seized it. On or about April 1, 1992, the towing company informed Dudley that the vehicle had been seized by government officials. The FBI obtained a federal seizure warrant on or about April 15, 1992, and seized the vehicle from the Glendale Police Department. On or about April 18, 1992, Dudley received a notice of seizure dated April 17, 1992. On or about May 1, 1992, he received a letter from the FBI to Bluitt, explaining that the seizure was based on 21 U.S.C. § 881(a)(6), which provides for forfeiture of items intended to be furnished in exchange for a controlled substance or

used to facilitate any violation of subchapter I of Title 21 of the United States Code.

Dudley made his original motion for return of the vehicle to this Court on May 18, 1992. He also filed a claim and cost bond for the vehicle on June 15, 1992, pursuant to 19 U.S.C. § 1608. While this motion was pending, the government filed a complaint for forfeiture on July 9, 1992, instituting case No. C–92–2629–VRW. Magistrate Judge Wilken issued her order on August 7, 1992, requiring the government to return the vehicle within fourteen days. Instead, the government filed this motion for reconsideration on August 12, 1992.

The Buick was last registered in the name of Erick Coleman, alleged by the government to be a resident of Oakland, California. Coleman's signature is also on the certificate of ownership. Dudley disclaims any knowledge of Coleman. The registration on the vehicle expired in November 1991. Dudley acquired the certificate of ownership of the vehicle in March when he took possession, but he had not signed the certificate, or registered the vehicle in his own name.[2]

## II.

### A. *Standard of Review.*

■ Pursuant to Local Rule 410–2 of the United States District Court for the Northern District of California, this Court's review of the magistrate judge's order depends on whether the magistrate judge was exercising her jurisdiction according to 28 U.S.C. § 636(b)(1)(A) over "nondispositive pretrial matters," or under 28 U.S.C. § 636(b)(1)(B) over "dispositive matters." If the former is the case, then this Court, pursuant to Local Rule 410–2(a), reviews the order to determine whether it is clearly erroneous or contrary to law. If the latter, this Court must review the order *de novo*.

nia license plate number 2GLN879. The Court assumes all descriptions refer to the same vehicle.

**2.** At oral argument, Dudley represented to the Court that because the vehicle was seized about a week after he took possession and received the certificate of ownership, he had not had time to

change the registration before the seizure and, subsequent to the seizure, he declined to invest the approximately $2,000 the Department of Motor Vehicles informed him it would cost to register the vehicle until he was assured of retaining ownership.

This motion has been docketed under the criminal prosecution of Bluitt and his co-defendants. It is clearly "pretrial" and "non-dispositive" with respect to Bluitt. However, like the motions reviewed by the Ninth Circuit in *United States v. Martinson*, 809 F.2d 1364 (9th Cir.1987), and decided by the United States District Court for the Southern District of California in *Brantz v. United States*, 724 F.Supp. 767 (S.D.Cal.1989), despite the fact that this matter was filed under the criminal docket number, it is "essentially a civil action to recover personal property." *Id.* at 772; *see also Martinson*, 809 F.2d at 1367. This motion is completely dispositive of this civil action because it will decide which party receives custody of the vehicle. Therefore, this Court reviews the magistrate judge's order *de novo*.

### B. *Jurisdiction.*

■ In his original motion for return, Dudley appealed to the Court's equitable jurisdiction. The government argues in its motion for reconsideration that the decision of the magistrate judge to exercise equitable jurisdiction and decide Dudley's motion was erroneous, and it urges this Court to revoke the order on that basis.

The government argued in its opposition to Dudley's original motion that the Court lacked equitable jurisdiction because (1) Dudley was not a party in the criminal case, and (2) Dudley was afforded an adequate remedy at law. For the reasons discussed below, the Court finds that both these objections are ill-founded.

If Dudley were a criminal defendant, he could file a motion for return of property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. The fact that he is not a defendant in the underlying criminal prosecution, however, does not mean he is beyond the reach of the Court's equitable jurisdiction. The Ninth Circuit has clearly stated that "[a] district court has jurisdiction to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant." *Martinson*, 809 F.2d at 1366–67. The government argues that because Dudley was *never* the target of a criminal prosecution, his motion is distinguishable from that

of Martinson. Martinson was mistakenly arrested under an expired warrant, and released without ever being prosecuted. He then proceeded to file a Rule 41(e) motion that the Ninth Circuit considered as a civil case. *Id.* at 1367. Despite the fact that there were no criminal proceedings pending against Martinson, or against anyone at all for offenses related to the seized property, the Ninth Circuit found that the exercise of equitable jurisdiction over his motion was proper. In the present case, there are no criminal proceedings pending against Dudley, but there are criminal proceedings pending against his client for the same offenses for which the government seeks forfeiture. As further explained below, the fact that there are close ties between Dudley's motion and the underlying criminal prosecution is a reason why the Court *should* exercise equitable jurisdiction, rather than a reason it should decline equitable jurisdiction.

■ The government has repeatedly argued that this Court lacks any equitable jurisdiction over this motion because Dudley has an adequate remedy at law. If the government is correct that civil forfeiture proceedings offer Dudley an adequate remedy at law, it is also correct that this Court has no equitable jurisdiction. It is a general rule that equitable jurisdiction is available only in the absence of an adequate legal remedy. *Interstate Cigar Co. v. United States*, 928 F.2d 221, 223 (7th Cir.1991); *Infusaid Corp. v. Infusaid, Inc.*, 739 F.2d 661, 668 (1st Cir. 1984); *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir.1982). The Court must examine Dudley's available legal remedies in order to determine whether they are in fact adequate.

When the original motion to return was brought in May 1992, the government had done no more than send a notice of seizure. The magistrate judge found that this action was not sufficient to initiate the forfeiture proceeding that the government argued was an adequate legal remedy. This Court need not revisit the question of whether notice initiates a forfeiture proceeding because the government has since filed a forfeiture complaint, which has undisputably initiated a forfeiture proceeding. If this offers an adequate legal remedy, it is irrelevant that Dud-

ley first sought the equitable jurisdiction of this Court. As soon as adequate remedy at law becomes available, this Court ceases to have equitable jurisdiction. *United States v. United States Currency $83,310.78*, 851 F.2d 1231, 1234–25 (9th Cir.1988) (no need to exercise equitable jurisdiction over Rule 41(e) motion when forfeiture proceedings are subsequently initiated).

The Ninth Circuit has thrice addressed the adequacy of legal remedy available to a person seeking return of property subject to forfeiture. In *Martinson*, it found that equitable jurisdiction was proper, because the destruction of the property in question had rendered any civil forfeiture action moot, removing any possibility of legal remedy. In contrast, in *Currency*, the Ninth Circuit found that the plaintiff could assert her Fourth Amendment claims against illegal search and seizure and request the return of her property in a civil forfeiture action. In that fact situation, the court flatly stated that "when a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant." 851 F.2d at 1235. This decision was followed in *United States v. Elias*, 921 F.2d 870 (9th Cir.1990), when the Ninth Circuit again found that the district court had properly refused to exercise its equitable jurisdiction over a claim by a criminal defendant that could be heard in a civil forfeiture action.[3]

This case falls between the two extremes represented by *Martinson*, in which the claimant had *no* remedy at law, and *Elias* and *Currency*, in which the claimants had an adequate remedy in civil forfeiture proceeding. Unlike Martinson, Dudley has a remedy at law. If this Court refuses to exercise equitable jurisdiction, he will have the opportunity to prove his innocent ownership in the forfeiture action and show that the seizure was unlawful under 21 U.S.C. § 881(a)(6). That legal remedy, however, will not afford him the complete relief it offered Elias and the claimant in *Currency*. At the very least, the forfeiture action may not be decided for some months, even if it proceeds in a timely

fashion. Most probably, it will be stayed until the conclusion of the prosecution of Bluitt and his co-defendants under 21 U.S.C. § 881(i), in order to ensure that discovery in the civil proceeding does not interfere with the criminal prosecution. *See* S.Rep. No. 98–225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.C.C.A.N. 3182, 3398–3399 (explaining the purpose of 21 U.S.C. § 881(i)).

There was not such a prospect of delay in *Currency*, in which there was no pending criminal action, nor did the court raise such a possibility in *Elias*, in which a criminal defendant sought return of his property. More important, the prospect of an indefinite period of time before ultimate resolution of the forfeiture proceeding did not threaten any harm to the claimants, or anyone else. The current case differs in this important respect. If Dudley is unable to know whether or not he will be compensated for his services for at best sometime subsequent to this Opinion and Order, and most probably until the conclusion of the time in which his services would be needed, he is faced with an untenable choice: either he must withdraw from the case, and give up gainful employment, or he must render his services under the threat that he will never receive payment. Dudley has stated in his declaration and at oral argument that he will seek the Court's permission to withdraw from Bluitt's representation should the magistrate judge's order be revoked. This harm faced by Dudley is of a type not faced by the claimants in *Elias* and *Currency*. The Seventh Circuit has recently reiterated the long-standing principle of equity that the "mere existence" of a possible legal remedy is not sufficient to warrant denial of equitable relief: "In order to preclude the granting of relief by the equity court, 'an available remedy at law must be plain, clear and certain, prompt or speedy, sufficient, full and complete, practical, efficient to the attainment of the ends of justice, and final.'" *Interstate Cigar*, 928 F.2d at 223 (quoting 27 Am.Jur.2d *Equity* § 94 (1966)). The court relied on the Supreme Court case of *American Life Insurance Co. v. Stewart*, 300 U.S. 203, 214, 57 S.Ct. 377,

---

**3.** The case of *United States v. Price*, 914 F.2d 1507 (D.C.Cir.1990), raised for the first time by the government at oral argument, has similar facts to *Elias* and *Currency* and, as such, adds nothing to this Court's analysis.

380, 81 L.Ed. 605 (1937), which similarly states that "[a] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." This is such a case in which the dictates of equity require the Court to look beyond the possibility of legal remedy to consider its actual effects.

Further, Dudley's withdrawal would deprive Bluitt, a criminal defendant, of counsel of his choice, after that counsel has invested eight months in his defense. The Court recognizes that impecunious defendants have no Sixth Amendment right to choose their counsel. *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624, 109 S.Ct. 2646, 2651, 105 L.Ed.2d 528 (1989). The Sixth Amendment only guarantees Bluitt adequate counsel, and such would certainly be available to him were Dudley to withdraw. ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts. '[A] defendant may not insist on representation by an attorney he cannot afford.'" *Id.* at 624, 106 S.Ct. at 2651.) If Dudley is forced to rely on the proffered legal remedy, however, and the Court subsequently finds that he was an innocent owner of the vehicle when it was seized, then Bluitt is *not* an impecunious defendant, but a defendant who had retained and paid counsel of his choice, and then was deprived of his counsel by an illegal seizure. The harm threatened to Bluitt's Sixth Amendment right to counsel of his choice is irreparable, and can only be avoided by this Court exercising equitable jurisdiction. Therefore, considering the threatened harm to both Bluitt and Dudley, the Court finds that Dudley does not have an adequate remedy at law and that this Court may properly exercise equitable jurisdiction.

### C. *Legality of the Seizure.*

█ Dudley came to this Court claiming that the seizure was contrary to 21 U.S.C. § 881(a)(6), which declares that "no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have committed or omitted

*without the knowledge or consent of that owner."* (Emphasis added.) In a forfeiture proceeding, it is Dudley's burden as owner to establish lack of knowledge of or consent to the acts that are the basis of the forfeiture action. *United States v. 1980 Red Ferrari,* 827 F.2d 477, 478 (9th Cir.1987). Although this is not a forfeiture proceeding, the Court will apply the same standards to determine whether the seizure was illegal and, therefore, the property must be returned.

In order to meet his burden to establish his innocent ownership, Dudley offers a sworn declaration that he had no knowledge of the vehicle's use in any of the drug-related activities detailed in the government's papers until receiving the notice of forfeiture almost four months after receiving the vehicle as a retainer, and that he knew Bluitt to have gainful employment as a rap music producer for True Black Records in Oakland, California. Decl. of David M. Dudley in Supp. of Mot. for Return of Property, filed June 11, 1992, ¶¶ 2, 5, 7. The inferences "that reasonably could be drawn" from these facts, *see Red Ferrari,* 827 F.2d at 480, are that Dudley knew that Bluitt had an income such that he would be able to afford this moderately priced automobile,[4] and that the vehicle had been purchased with lawfully earned funds.

The government offers affidavits, the seizure warrant, and its forfeiture complaint to support its allegations that the vehicle was used in drug transactions. This record, which includes statements from witnesses that Bluitt bought twelve vehicles in two years in the names of other people, and that immediately before his arrest, he promised the vehicle to a co-defendant in exchange for heroin, is sufficient to show probable cause that the vehicle was both purchased with illegal proceeds and intended to be furnished in exchange for a controlled substance in violation of 21 U.S.C. § 881(a)(6). None of the evidence marshaled for the Court, however, speaks to Dudley's ownership. It does not contradict Dudley's declaration that his ownership, no matter what the past history of the vehicle, was innocent.

4. The government has alleged that Bluitt purchased the vehicle, used, for $11,000.

In this motion for reconsideration, the government relies only on a list of seven circumstances,[5] the factual background of the underlying case and Dudley's experience as a criminal lawyer to "cast doubt" on Dudley's sworn declarations of innocent ownership. The first and sixth circumstances, as Dudley points out in his response, are completely unremarkable under the circumstances of Bluitt's incarceration. The second circumstance is not so much a circumstance as the basis for Dudley's original motion. Dudley explained the seventh circumstance to the Court as cited above in footnote 2. The third, fourth, and fifth circumstances are facts that show that his client had been sloppy about registering his vehicle.[6] Considered with the totality of the information before the Court, however, they do not carry the burden the government wishes them to bear. To leap from evidence that one's client has failed to register a vehicle with the Department of Motor Vehicles to the conclusion that the vehicle was either bought with funds gained from illegal drug transactions or was intended to be furnished in a drug transaction is too far a jump. Many Californians would be amazed to realize that the government considers their violations of registration requirements evidence of drug dealing.

This case lacks all the indicia that led the Ninth Circuit in *Red Ferrari* to agree with the district court that in order to avoid knowledge of the connection between a criminal defendant's controlled substance violations and the vehicle in question, the claimant would need to "stick[ ] his head in the sand." 827 F.2d at 480. In that case, unlike this one, the claimant failed to present any evidence of a legitimate source of funds for the purchase of the vehicle. *Id.* at 479. The *Red Ferrari* claimant had heard allegations of the former owner's drug trafficking for years while he worked as a police officer, had lived with the former owner's lawyer while she defended him on drug-related charges, and himself did investigative work to prepare the former owner's defense. Although this Court recognizes that the government need not show that Dudley had actual knowledge of the vehicle's link to drug trafficking, given the complete absence of *any* evidence regarding Dudley's actual knowledge of the history of the vehicle, and the lack of circumstantial evidence that would lead the Court by reasonable inferences to assume actual knowledge, Dudley, by his uncontradicted declaration, has met his burden. Considering the evidence as a whole after a *de novo* review of the record, this Court finds that Dudley was an innocent owner of the Buick at the time of its seizure and, therefore, that the seizure violated 21 U.S.C. § 881(a)(6).[7]

---

5. The government offers the following list of Mr. Dudley's "admissions":

    1. Bluitt "transferred" the automobile to Dudley while Bluitt was in prison.

    2. Bluitt told Dudley that the automobile belonged to him.

    3. The automobile has never been registered in Bluitt's name.

    4. The automobile was registered in the name of Erick Coleman, an individual that Dudley had never before met.

    5. Erick Coleman signed the pink slip [certificate of ownership] to the automobile, but the pink slip was undated and no mileage or other details were recorded on it.

    6. Some time later, someone other than Bluitt delivered the automobile to Dudley.

    7. Dudley never attempted to register the automobile in his own name.

Mot. for Reconsideration, filed Aug. 12, 1992, at 5–6.

6. In its initial opposition to the motion to return, the government also argued that Dudley never had legal ownership of the vehicle and, therefore, could not demand its return. As the magistrate judge pointed out in her order, the government rests this argument on the reasoning that Erick Coleman, as the person whose name was on the pink slip was the lawful owner, not Bluitt, and that Dudley, because Bluitt never had ownership to transfer and because he never got his name on the pink slip, is not now the owner. But if Coleman was and is the legal owner, the government's argument in support of its seizure is undercut because Coleman is not a defendant in the underlying action. If Dudley is *not* the owner because his name is not on the pink slip, then neither was Bluitt when the vehicle was seized and evidence of Bluitt's past drug activities does not create probable cause to seize the vehicle.

7. Given the limited evidence regarding Dudley's knowledge that the government was able to muster, there is also a serious question in the Court's mind regarding whether Justice Department Guidelines were followed when this forfeiture complaint was initiated. According to United States Attorneys' Manual § 9–111.430, forfeiture of an asset transferred to an attorney as payment for legal fees in a criminal matter may be pursued "where there are reasonable grounds to believe that the attorney had actual knowledge

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. The magistrate judge's order of August 7, 1992, granting Dudley's motion for return of property is AFFIRMED.

2. The United States shall return the black 1987 Buick Royal Turbo Coupe, VIN number 1G4GJ1172HP450521, to David M. Dudley within fourteen days of the filing of this Opinion and Order.

that the asset was subject to forfeiture at the time of transfer." Actual knowledge refers to actual knowledge that the *particular* asset the attorney received was subject to forfeiture. *Id.* at § 9–111.510. "Reasonable grounds" exist when there is evidence that the attorney knew either (a) that the government had asserted that the particular asset is subject to forfeiture, or (b) that the particular asset is in fact from criminal misconduct. *Id.* at § 9–111.511. There is no evidence that Dudley had knowledge of any government assertion of forfeiture before he received a phone call from a representative of the towing company in April, saying that the police had impounded the vehicle. Evidence that a particular asset is from criminal misconduct can consist of either client communications, such as testimo-

ny at trial, or circumstantial evidence, such as the method or manner of payment and the attorney's knowledge of the client's means of livelihood. *Id.* at § 9–111.512. In this case, there are no such incriminating client communications, the method of payment was necessarily indirect because Bluitt was in custody, and Dudley has declared he had knowledge of Bluitt's past gainful employment. Therefore, under Justice Department Guidelines, there was no justification to start such proceedings.

The Court also notes that to its knowledge, no forfeiture proceedings have been initiated against any other vehicles that Bluitt allegedly purchased in false names using illegally gotten gains. Only the vehicle that he used as a retainer for his lawyer has been seized.